132 P.3d 378

**David KAMALU and Roxanne Kamalu, Plaintiffs,**

**and**

**State of Hawai'i, Defendant–Appellant/Cross–Appellee,**

**v.**

**PAREN, INC. d/b/a Park Engineering, Defendant–Appellee/Cross–Appellant,**

**and**

**Hawaii Geotechnical Group, Inc., d/b/a Walter Lum Associates, Defendant–Appellee.**

No. 24671.

Supreme Court of Hawai'i.

April 19, 2006.

---

Frank K. Goto, Jr., on the requests, for the defendant-appellee/cross-appellant ParEn, Inc. d/b/a Park Engineering.

Paul B.K. Wong, of McCorriston Miller Mukai MacKinnon, on the requests, for the defendant-appellee Hawaii Geotechnical Group, Inc. d/b/a Walter Lum Associates.

Gary S. Miyamoto, of Ayabe, Chong, Nishimoto, Sia & Nakamura, in opposition, for the defendant-appellant/cross-appellee State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, and ACOBA, JJ., and Circuit Judge MASUOKA, in place of DUFFY, J., recused.

Opinion of the Court by LEVINSON, J.

As prevailing parties on appeal to this court in *Kamalu v. Paren, Inc.*, No. 24671, 109 Hawai'i 457, 127 P.3d 953 *see* summary disposition order (Haw. Jan. 23, 2006) [hereinafter "SDO"], the defendant-appellee/cross-appellant ParEn, Inc. (ParEn) and the defendant-appellee Hawaii Geotechnical Group, Inc. (HGG) [hereinafter, collectively, "the Appellees"] each filed a separate request for this court to award them fees and costs incurred on appeal. ParEn requests a total of $305,397.87. HGG requests a total of $20,837.78. The defendant-appellant/cross-appellee State of Hawai'i (hereinafter, "the State") filed a separate objection to each r

For the reasons discussed *infra* in parts II.B and II.C.2 to .4, we grant both of the Appellees' requests in part as summarized *infra* in part III.

I. *BACKGROUND*

The underlying dispute arose out of an accident at the site of a State-owned construction project. The plaintiff David Kamalu was an employee of the Hawaiian Dredg-

ing and Construction Company (HDCC), the general contractor.[1] Effective August 6, 1992, ParEn entered into a contract with the State "wherein ParEn agreed to provide certain design services for the Project, including the preparation of plans and specifications." ParEn in turn hired HGG as a subcontractor. On December 7, 1995, "the soil under the [moss-rock] wall that had been exposed by the [project] failed, ... causing ... Kamalu to jump off a working platform and sustain injuries." On December 4, 1997, Kamalu and the plaintiff Roxanne Kamalu [hereinafter, collectively, "the Plaintiffs"] filed a complaint alleging in relevant part:

9. The State had the right, authority, and duty to design, construct, inspect and maintain its premises in a safe condition and to remedy any dangerous or defective conditions existing thereon and adjacent thereto.

10. [ParEn and the State] had full knowledge that many persons, including workers such as [David], would be present on and about the construction site.

11. Although [ParEn and the State] knew of, or should have known of, the dangerous and/or defective condition of the wall, and/or the dangers in conducting construction activities adjacent to the wall, *[ParEn and the State] negligently failed to design, construct, protect and maintain the site in a safe condition and failed to remedy such dangerous and/or defective conditions and/or failed to take such action as was reasonably necessary to protect persons in the area, and [David] in particular, against such dangerous and/or defective conditions.*

12. [David] was injured as a direct and proximate result of the *negligence of [ParEn and the State]*.

13. The incident was caused by the *negligence,* actions and/or omissions *of [ParEn and the State]*.

14. As a direct and proximate result of *[ParEn's and the State]'s negligence* ...:

.... [descriptions of injuries]

17.... [T]he State ... retained [ParEn] as its consultant.

1. Kamalu and HDCC were not parties to the appeal.

272

18. ... Pursuant to its contract with the State, [ParEn] was under a duty to provide services before and during construction....

19. [ParEn] *negligently* performed or *negligently* failed to perform its duties, which *negligence* directly and proximately resulted in the damages to [the] Plaintiffs....

....

24. ... [ParEn and the State] are liable to [the] Plaintiffs under the theories of breach of warranty, implied warranty, *strict liability,* defective design, defective manufacture, failure to supervise, failure to warn, maintaining or creating unsafe premises and/or an unsafe place to work, *respondeat superior, res ipsa loquitur,* agency liability[,] partnership liability[,] and/or otherwise.

(Some emphases added and some in original.)

On May 14, 2000 and June 4, 2001, respectively, ParEn and HGG filed cross-claims against the State. *See* Hawai'i Rules of Civil Procedure (HRCP) Rule 13(g).[2] ParEn's pleading averred in relevant part:

2. If [the] Plaintiffs were injured and damaged as alleged in the[ir c]omplaint, such injuries and damages were caused by the *negligence, strict liability,* breach of express and/or implied warranty, breach of contract and/or breach of other legal duty of the State....

3. ... [T]he State is vicariously liable for the negligence of its contractors....

4. Any *negligent* act or omission on the part of ParEn w[as] passive and secondary whereas the *negligent* acts or omissions of the State were primary and active, and therefore, ParEn is entitled to indemnification from the State.

....

6. ... [I]f it be determined that ParEn is in any way liable, such liability is the result of the acts and/or omissions of the

State ..., and ParEn is entitled to reimbursement, subrogation, indemnification and/or contribution from the State....

(Emphases added.) HGG's pleading was materially identical, substituting its own name for that of ParEn.

On June 21, 2001, the Appellees and the State stipulated "that the total amount of damages in this action [is] set at $1,150,000.00." On July 11, 2001, the Appellees, the State, and the Plaintiffs stipulated to the dismissal with prejudice of "all claims of [the] Plaintiffs ... against all [d]efendants," providing that "[c]ross-claims between [the State] and [the Appellees] are not dismissed."

The Appellees' cross-claims proceeded to trial. On September 21, 2001, the circuit court entered findings of fact (FOFs), conclusions of law (COLs), and an order in favor of the Appellees and against the State for $1,150,000.00. On October 10, 2001, the circuit court entered a judgment providing that "the State is solely liable for the injuries and damages sustained by [the Plaintiffs], and accordingly, the State shall pay the sum of $1,150,000.00 to [the Appellees]."

On November 6, 2001, the State timely filed its notice of appeal from the circuit court's October 10, 2001 judgment. On November 20, 2001, ParEn timely filed its notice of cross-appeal from the September 21, 2001 FOFs, COLs and order. On January 23, 2006, via summary disposition order, we affirmed the circuit court's October 10, 2001 judgment. SDO at 3. This court filed its notice of judgment on appeal on February 22, 2006. On March 7 and 8, 2006, ParEn and HGG, respectively, timely filed the present requests.

## II. *DISCUSSION*

### A. *Introduction*

ParEn seeks reimbursement for: (1) attorneys' fees for (a) completed work ($55,888.00)

2. HRCP Rule 13(g) provides:
 A pleading may state as a cross-claim any claim by one party against a co-party *arising out of the transaction or occurrence that is the subject matter* either *of the original action* or of a counterclaim therein or relating to any property that is the subject matter of the original

action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.
 (Emphasis added.)

and (b) work in progress ($2326.00); (2) the costs of (a) transcripts ($325.54), (b) filing fees ($327.36), and (c) printing/copying of briefs/appendices ($2,159.66); and (3) post-judgment interest on (a) the costs listed *supra* ($4.31), and (b) the $1,150,000.00 judgment in favor of the Appellees ($244,367.00). In support of its request, ParEn cites Hawai'i Rules of Appellate Procedure (HRAP) Rules 37, 39, 53(b), and 54(b) and Hawai'i Revised Statutes (HRS) §§ 607–9 (1993), 607–14 (Supp.1997) and 662–8 (1993).[3]

HGG seeks reimbursement for: (1) attorneys' fees ($16,340.83); and (2) the costs of (a) printing/copying of briefs/appendices ($13.60) and (b) trial transcripts ($225.78). In support, HGG cites HRAP Rule 39 and HRS §§ 607–14, 607–15.5 (1993), and 607–24 (1993).[4]

3. HRAP Rule 37 provides in relevant part:
 Unless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was entered in the circuit or district court.
 HRAP Rule 39 provides in relevant part:
 (a) ... Except in criminal cases or as otherwise provided by law, ... if a judgment is affirmed ..., costs shall be taxed against the appellant ... unless otherwise ordered....
 (b) ... In cases involving the State of Hawai'i ..., if an award of costs against the State is authorized by law, costs shall be awarded in accordance with the provisions of this rule; otherwise costs shall not be awarded for or against the State of Hawai'i....
 (c) ... Costs in the appellate courts are defined as: (1) the cost of the original and one copy of the reporter's transcripts if necessary for the determination of the appeal; ... (3) the fee for filing the appeal; (4) the cost of printing or otherwise producing necessary copies of briefs and appendices, provided that copying costs shall not exceed 20¢ per page; and (5) any other costs authorized by statute or rule.
 (d) ... (1) A party who desires an award of attorney's fees or costs shall request them by submitting an itemized and verified bill of fees or costs....
 HRS § 607–9 provides in relevant part:
 All actual disbursements, including but not limited to ... incidental expenses, including copying costs, ... sworn to by an attorney ..., and deemed reasonable by the court, may be allowed in taxation of costs.
 HRS § 607–14 provides in relevant part:
 In all the courts, in all actions in the nature of assumpsit ..., there shall be taxed as attorneys' fees, to be paid by the losing party ..., a fee that the court determines to be reasonable....
 HRS § 662–8 provides:

### B. *Attorneys' Fees*

ParEn claims that, inasmuch as it and the State "sought contractual remedies such as damages for the breach of contract[and] rescission, ... the claims by and between the [State] and [ParEn] remain[ ] fundamentally a contract lawsuit and in the nature of assumpsit," warranting reimbursement of its attorneys' fees pursuant to HRS § 607–14, *see supra* note 3. (Citing *Blair v. Ing,* 96 Hawai'i 327, 31 P.3d 184 (2001); *Leslie v. Estate of Tavares,* 93 Hawai'i 1, 6, 994 P.2d 1047, 1052 (2000); *Braham v. Honolulu Amusement Co.,* 21 Haw. 583 (1913); *Fogarty v. State,* 5 Haw.App. 616, 705 P.2d 72 (1985); *Hong v. Kong,* 5 Haw.App. 174, 683 P.2d 833 (1984); *Helfand v. Gerson,* 105 F.3d 530 (9th Cir.1997).)

> On all final judgments rendered against the State in actions instituted under this chapter, [the State Tort Liability Act,] interest shall be computed at the rate of four per cent a year from the date of judgment up to, but not exceeding, thirty days after the date of approval of any appropriation act providing for payment of the judgment.

The remaining provisions cited by ParEn are inapplicable. It apparently used a superseded edition of the local rules; HRAP Rule 53(b) was repealed effective January 1, 2004. HRS § 54(b) does not exist, or, if ParEn meant to cite to HRCP Rule 54, that rule pertains to costs and fees in the *circuit* courts, *see* HRCP Rule 1.

4. HRS § 607–15.5 provides in relevant part:
 In all tort actions in which a judgment is entered by a court of competent jurisdiction, attorneys' fees for both the plaintiff and the defendant shall be limited to a reasonable amount as approved by the court having jurisdiction of the action. In any tort action in which a settlement is effected, the plaintiff or the defendant may request that the amount of their respective attorneys' fees be subject to approval of the court having jurisdiction of the action.
 HRS § 607–24 provides in relevant part:
 Neither the State nor any county or any political subdivision, board, or commission thereof, nor any officer, acting in the officer's official capacity on behalf of the State or any county or other political subdivision, board, or commission thereof, shall be taxed costs.... In all cases in which a final judgment ... is obtained against the State, ... the prevailing party shall be reimbursed by the State[ ] ... all actual disbursements, not including attorney's fees or commissions, made by the prevailing party and approved by the court.

HGG asserts that "since a contribution claim 'sounds in contract' and is in the nature of assumpsit, HGG should recover its ... fees ... pursuant to [HRS] § 607–14." HGG adds that " 'courts in Hawai[']i regularly award attorneys' fees ... against various governmental entities.' " (Quoting *Hawaiian Isles Enters. v. City & County of Honolulu,* 76 Hawai'i 487, 493, 879 P.2d 1070, 1076 (1994).) In the alternative, HGG states: "[e]ven if HGG's judgment against the State ... is ... based in tort rather than contract, HGG is still entitled to ... attorneys' fees pursuant to [HRS § 607–15.5, *see supra* note 4]."

In the State's opposition to ParEn, we can divine no coherent argument from its first subsection regarding fees: "HRAP Rule 39(d)[, *see supra* note 3,] does not entitle prevailing parties to recover attorney's fees in all appeals because it only allows parties to file motions for attorney's fees and costs." (Emphases omitted.) The State further argues that the Appellees cannot recover fees pursuant to HRS § 607–14 because

> [t]he Judgment in the [circuit] court was not based on or pursuant to a contract claim.... The State was found solely liable based [on] negligence or tort law, not breach of contract....
>
> ....
>
> Liability for contribution cannot be based on a breach of contract because liability is based on the Uniform Contribution Among Tortfeasors Act[, HRS §§ 663–11 to –17]....
>
> ....
>
> [The Appellees'] citation to and reliance [on] HRS § 607–14 is frivolous.... The claims raised in this lawsuit did not "factually implicate" a contract or the breach of a contract. The Complaint ... was limited to negligence claims against all parties.
>
> ....

... The references to breach of contract were decorative and not germane to the tort claims being litigated.

(Citing *Troyer v. Adams,* 102 Hawai'i 399, 432, 77 P.3d 83, 116 (2003); *Leslie,* 93 Hawai'i at 6, 994 P.2d at 1052 (2000); *Karasawa v. TIG Ins. Co.,* 88 Hawai'i 77, 80–81, 961 P.2d 1171, 1174–75 (App.1998).)

Moreover, the State rejects HGG's application of HRS § 607–15.5:

> [T]hat statute does not authorize the Court to award attorneys' fees in tort actions or entitle the prevailing party to recover fees in tort actions. HGG does not inform the Court that the legislative intent underlying this statute was to grant [c]ourts the "discretionary authority to review attorney's fees" in all tort actions including the contingent fee arrangements. The statute authorizes the [c]ourts to review attorneys' fees in order "to limit attorneys' fees to a reasonable amount." The legislative history does not reflect an intent that: 1) attorneys' fees are recoverable in tort actions; or 2) Hawai[']i should depart from the established principle that attorney's fees are not recoverable ... in tort actions.

(Citing *Chun v. Park,* 51 Haw. 462, 462 P.2d 905 (1969).)

■ Finally,[5] the State asserts that the amounts that the Appellees request in fees are unreasonable and inadequately documented.

In its reply, ParEn argues that, in *Fought & Co. v. Steel Eng'g & Erection, Inc.,* 87 Hawai'i 37, 951 P.2d 487 (1998), we "awarded fees and costs to the prevailing part[y] and explained that the doctrine of sovereign immunity did not preclude the award of appellate costs and attorney fees to [a] general contractor on [an] airport terminal construction contract against the State Department of Transportation."

---

5. The State inserts its own "request" for attorneys' fees, actually a veiled motion for sanctions: "The State should be reimbursed for its attorney's fees to oppose [ParEn's r]equest.... The State's fees should be borne by Par[E]n who should not have filed this frivolous Request to obtain an unwarranted windfall of mon[ie]s from the State." While we may levy monetary sanctions pursuant to HRAP Rule 51, ParEn's argument concerning HRS § 607–14 was not " 'so manifestly and palpably without merit[ ] so as to indicate bad faith on [ParEn's] part such that argument to the court was not required,' " *see Canalez v. Bob's Appliance Serv. Ctr.,* 89 Hawai'i 292, 300, 972 P.2d 295, 303 (1999) (quoting *Coll v. McCarthy,* 72 Haw. 20, 29, 804 P.2d 881, 887 (1991)). Consequently, we do not find that sanctions are warranted.

 "Assumpsit is a common law form of action which allows for the recovery of damages for the non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." *Schulz v. Honsador, Inc.*, 67 Haw. 433, 435, 690 P.2d 279, 281 (1984); *see also Scott v. Kona Dev. Co.*, 21 Haw. 408 (1913) ("[A] breach of the promise declared on is of the essence of the action of assumpsit."). Whether "assumpsit" exists so as to trigger HRS § 607–14 depends upon the "essential character of the underlying action in the trial court." *See Leslie*, 93 Hawai'i at 4, 994 P.2d at 1050–51.

In *Healy–Tibbitts Constr. Co. v. Hawaiian Indep. Ref., Inc.*, 673 F.2d 284 (9th Cir.1982) (applying Hawai'i law), the United States Court of Appeals for the Ninth Circuit held that the plaintiff's inclusion of two claims "arguably in tort" among five contract claims in the complaint "[a]t most ... raise[d] a doubt as to whether the action was in assumpsit or in tort," but did not rebut "the presumption ... that it sound[ed] in assumpsit and not tort." *Id.* at 285–86. Nonetheless, the court acknowledged that "[i]f the contract claims are merely decorative, for instance, and not germane to the genuine dispute being litigated, the court might appropriately decline to apply the provisions of [HRS § ] 607–14." *Id.* at 286 (in dictum).

In the present matter, the Plaintiffs' claims sounded in tort and not assumpsit. The essence of their allegations was that ParEn's and the State's negligent failure to protect David from "dangerous and/or defective conditions" legally caused his injuries. *See supra* part I. The Appellees' cross-claims against the State, in turn, essentially prayed for subrogation in the event that the circuit court found either or both of them negligent, on the theory that "the State [wa]s vicariously liable for the *negligence* of its contractors." *Id.* (emphasis added). Although the Plaintiffs appended non-tort theories of recovery, including the catch-all "and/or otherwise," the underlying action did not depend upon duties created by agreement among the par-

ties. *Cf. Blair*, 96 Hawai'i at 332–33, 31 P.3d at 189–90 ("Without the implied contract, ... [the p]laintiffs would have no negligence claim."); *Braham*, 21 Haw. at 585 ("The [complaint] ... contain[ed] no allegation ... of any breach of any duty fixed by law independently of the will of the parties").

Moreover, we agree with the State that HRS § 607–15.5 "does not authorize the Court to award attorneys' fees in tort actions." Its plain language provides merely for a limitation on attorneys' fees in tort actions that would otherwise be allowed—it states that "fees ... *shall be limited* to a reasonable amount" (emphasis added), not that "reasonable fees shall be awarded," nor even that "reasonable fees *may* be awarded."

In sum, the Appellees are not entitled to fees either pursuant to HRS § 607–14 or to HRS § 607–15.5.[6]

### C. Costs

#### 1. *The parties' arguments*

The Appellees seek costs as enumerated *supra* in part II.A. (Citing *Finley v. Home Ins. Co.*, 90 Hawai'i 25, 38, 975 P.2d 1145, 1158 (1998); *Wong v. Takeuchi*, 88 Hawai'i 46, 54, 961 P.2d 611, 619 (1998); *Eastman v. McGowan*, 86 Hawai'i 21, 29, 946 P.2d 1317, 1325 (1997).)

In its objection to ParEn's request, the State provides no citation to authority but argues that "Par[E]n's failure to provide an accounting of its costs, by itself, dictates a denial of its Request because it cannot place the burden on either this Court or the State to identify and calculate its claimed costs or otherwise determine the basis for its calculations." Furthermore, the State seems to argue that certain costs declared to this court duplicate certain costs that the Appellees already requested in the circuit court and that the Appellees bear the burden of demonstrating that the similarly labeled costs are not duplicative and relate to the litigation of this appeal.

With respect to HGG's request for costs, the State urges that "HGG does not attach

---

**6.** ParEn further argues that the amount of fees it requests is "reasonable." Nonetheless, inasmuch as ParEn fails to show its entitlement to

fees as a matter of law, *see* discussion *infra*, we do not consider their request's reasonableness.

invoices or receipts from court reporters.... Absent supporting documentation, HGG has not provided th[is c]ourt with any basis for finding that the costs were actually incurred and ... reasonable."

In its reply, ParEn notes that HRAP Rule 39, *see supra* note 3, "clear[ly]" states that " '[i]n cases involving the State ..., *if an award* of costs against the State *is authorized by law,* costs shall be awarded in accordance with ... this rule.' " (Some emphases added and some omitted.) Hence, ParEn argues tautologically, its reimbursement of costs "is authorized by law."

Finally,[7] ParEn replies that it did document its costs through the receipts it attached to its request.

### 2. *The State is not immune from costs.*

#### a. *Introduction*

■ The Appellees cite HRAP Rule 39, *see supra* note 3, as a basis for recovering costs. ParEn also cites HRS § 607–9, *see supra* note 3. HRAP Rule 39 prohibits awards of costs against the State unless "au-

thorized by law." Consequently, our authority to impose costs upon the State depends on the meaning of HRS § 607–24, *see supra* note 4.[8]

On its face, HRS § 607–24 consists of two mutually exclusive provisions: "Neither the State nor [other governmental entities] shall be taxed costs.... In all cases in which a final judgment ... is obtained against the State, ... the prevailing party shall be reimbursed by the State[ ] ... actual disbursements...." Accordingly, we must construe HRS § 607–24 by employing means extrinsic to its plain language.

Among the statutes of other jurisdictions expressly authorizing or exempting governments from costs, we find no such ambiguity. *See generally* 28 U.S.C. §§ 1915(f)(1), 1922 (2000); Ariz.Rev.Stat. Ann. § 12–348.A to .B (Westlaw 2006); Fla. Stat. Ann. § 57.111(4)(a) (Westlaw 2006); Iowa Code Ann. § 625.29.1 (Westlaw 2006); Minn.Stat. Ann. § 549.02.3 (Westlaw 2006); Neb.Rev. Stat. § 25–1803(1) (Westlaw 2005); N.C. Gen.Stat. § 6–19.1 (Westlaw 2006); Ohio Rev.Code Ann. § 2335.39(B)(1) (Westlaw

---

7. ParEn adds (1) that it was the prevailing party, and (2) that its requested expenses fit within the categories of recoverable expenses as defined by HRS § 607–9, *see supra* note 3, and established by case law. However, these arguments are beyond the scope of the State's objections.

8. We find in the case law of this jurisdiction only one prior attempt to interpret the relevant language of this statute. In *Wright v. Borthwick,* 34 Haw. 245 (1937), we interpreted Revised Laws of Hawaii (RLH) § 3795 (1935) (later recodified as amended, HRS § 607–24) as follows: "The purpose of [RLH § 3795] is to provide a means by which a person who prevails in a suit against the Territory[ ] ... may have restitution of costs expended by him." *Id.* at 254–55. However, we invoked no authority or rationale for our conclusion as to that "purpose." *See id.*

Moreover, the facts and holding of *Wright* are so different from those of the present matter as to render it inapplicable. In *Wright,* the appellees—who prevailed in the circuit court and on appeal—had apparently deposited an amount for costs with the clerk of the circuit court. *See id.* at 254. The circuit court had "order[ed] the clerk to reimburse [the] appellees for the amount of the cost deposits." *Id.* We affirmed that award, *see id.* at 255, thereby restoring to the appellees the deposits that would presumably have been awarded to the Territory of Hawai'i were it victorious—in other words, the Territory

simply had to give the appellees' their own money back, and we did not have to decide whether to "tax[ ] costs" under RLH § 3795.

Finally, while ParEn urges this court to apply *Fought & Co.,* which awarded costs against the State Department of Transportation (DOT), 87 Hawai'i 37 at 56–57, 951 P.2d at 506–07, the reasoning in that case, concerning fees, is inapplicable to the present issue of costs. In *Fought,* we held that, in light of the State's "express waiver of sovereign immunity set forth in HRS § 661–1 [("The several circuit courts of the State ... shall ... have original jurisdiction to hear and determine the following matters[:] (1) All claims against the State founded upon ... any contract ... with the State ....")]," the State was liable for attorneys' fees pursuant to HRS § 607–14, *see supra* note 3, "as an additional element of the prevailing party's damages." 87 Hawai'i at 56, 951 P.2d at 506. This court implied that a dispositive factor in the outcome was the absence in HRS § 607–14 of an "express[ ]" retention of the State's immunity. *Id.* Ultimately, *Fought* also awarded costs against DOT without application of HRS § 607–24, which, as we acknowledged in dictum, "expressly restricted" state liability for expenses. *See* 87 Hawai'i at 55–57, 951 P.2d at 505–07. Nor did any of the parties in *Fought* cite HRS § 607–24, as did HGG. 87 Hawai'i at 43–44, 951 P.2d at 493–94. Thus, the meaning of HRS § 607–24 remains a novel issue in the present matter.

2006); S.C.Code Ann. § 15–77–300 (Westlaw 2005); 4 V.I.Code Ann. § 513(e) (Westlaw 2005); Wis. Stat. Ann. § 814.245(3) (Westlaw 2006). Nor did the Hawai'i legislature simply adopt a model or uniform law "off the rack"; rather, we must attempt to ascertain the intention of the legislature without analogy to other existing law.

### b. *Legislative history of HRS § 607–24*

The perplexity of what is now HRS § 607–24 evolved piecemeal. What would become its first sentence took effect on April 15, 1907. *See* 1907 Haw. Sess. L. Act 63, §§ 1, 4 at 77–78 (codified as amended at HRS § 607–24) [hereinafter, "the first sentence"]. The first sentence prohibited certain governmental entities, including "the Territory," from "be[ing] taxed costs or required to pay the same or file any bond or make any deposit for the same in any case." *Id.*

Effective June 2, 1933, the legislature added what is now the second sentence, *see* 1933 Haw. Sess. L. Act 212, §§ 1–2 at 270–71 (codified as amended at HRS § 607–24) [hereinafter, "the second sentence"]. It read: "It is provided, however, that in all cases in which a final judgment ... is obtained against the Territory, ... [the prevailing party] shall be reimbursed by the [Territory] ... all actual disbursements, not including attorney's fees or commissions, made by [the prevailing party] and approved by the court."

Between the section's 1907 genesis and its 1933 amendment, the revisor of statutes apparently added the title "No costs against government," which appears in the 1925 codification but was absent from the 1907 provision, which had no catch-line at all. *Compare* RLH § 2546 (1925) *with* 1907 Haw. Sess. L. Act 63, § 1 at 77. Through its 1933 amendment, the legislature itself amended the catch-line to read "No bonds or costs to be filed or paid by government." 1933 Haw. Sess. L. Act 212, § 1 at 270.

Effective May 3, 1937, the legislature struck the phrase "It is provided, however,

that," 1937 Haw. Sess. L. Act 126, §§ 1–2 at 139, but left the remaining language materially unchanged.[9]

### c. *Analysis*

We hold that the legislature's purpose is best preserved by reading "costs" in the first sentence to mean amounts paid to the clerk of a court *prior to* litigation, whether as fees for filing, service, or garnishment; supersedeas bonds; or deposits for miscellaneous expenses. *See, e.g.,* HRS §§ 232–22, –23 (Supp.2004) (concerning deposits for costs by appellant in tax appeal court pursuant to Rule of the Tax Appeal Court 3(a): "[I]f an agreement ... is made between the appellant and ... [a] proper officer, whereby a reduction is made in the ... tax assessed ..., then a part of the *costs* ... proportionate to the amount of the reduction ... shall be returned to the appellant."), 607–3 (1993) (concerning "[c]ourt *costs*, waiver of *prepayment*, reduction or remission of") (emphases added), 607–4, –5(a) (Supp.2005) (concerning "fees ... paid ... as *costs* of court by the person *instituting* the action or proceeding") (emphases added), 607–5(c)(23), –6(a), –7 (Supp.2004) (concerning deposit of court costs on appeal); HRCP Rule 72(h) ("[T]he appellant shall pay all costs, if any, and furnish every bond or other security, if any, required by law."); Rule of the Circuit Courts 2.2 (concerning costs to be collected by the clerk); Rule of the District Courts 25 (concerning order for transcript); Rule of the Small Claims Division of the District Courts 7 (concerning costs for jury trial); Hawai'i Family Court Rule 72(h). On the other hand, we believe that "actual disbursements" as used in the second sentence of HRS § 607–24, *see supra* note 4, and in HRS § 607–9, *see supra* note 3, refers to the expenses to "be reimbursed by the" losing party *after* "a final judgment or decree." To construe "costs" in the first sentence and "actual disbursements" in the second sentence as equivalent would render the two sentences mutually exclusive as to the State's liability, implying that the legislature in 1933 and again in 1937 mistakenly left the first sentence intact while enacting and reenacting

---

9. A subsequent amendment, effective July 1, 1973, did not affect the statute in any respect

germane to the present appeal. *See* 1972 Haw. Sess. L. Act 88, §§ 5(w), 9 at 337–38.

the second. Such interpretations would defy common sense as well as a canon of construction: " '[T]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality.' " *State v. Naititi,* 104 Hawai'i 224, 234, 87 P.3d 893, 903 (2004) (quoting *State v. Cornelio,* 84 Hawai'i 476, 484, 935 P.2d 1021, 1029 (1997)); *see also* HRS § 1–15 (1993) ("Where the words of a law are ambiguous: . . . (3) Every construction which leads to an absurdity shall be rejected."). Rather than deem either the 1907 act or the 1933 act nugatory, we reconcile the two. *See, e.g., State v. Spencer,* 68 Haw. 622, 624, 725 P.2d 799, 800 (1986) (noting the "presumptive validity of legislative enactments"). Bearing in mind the principle of *noscitur a sociis,*[10] we believe that the legislature's placement of "costs" in context with "deposit" and "bond" in the first sentence shows that the "costs" from which the State is immune are those amounts that the State would otherwise have to "be taxed" *before* adjudication.

■ Moreover, again applying the canon of *noscitur a sociis* to the catch-line of HRS § 607–24 ("No bonds or costs to be filed or paid by government"), the juxtaposition of "costs" and "bonds" suggests that the legislature contemplated their similar functions.[11]

Further to the foregoing, we presume that the first and second sentences, employing different terms ("costs" versus "actual disbursements"), mean different things. *See generally Spencer Enters. v. United States,* 345 F.3d 683, 689 (9th Cir.2003). By contrast, then, "actual disbursements" means amounts paid *after* litigation.

In sum, a prevailing party having "obtained" "a final judgment" "against the State," we hold that the court may award the prevailing party its "actual disbursements" pursuant to HRS §§ 607–9 and 607–24 and HRAP Rule 39.

### 3. *Reasonableness of particular costs*[12]

#### a. *Transcripts*

■ The State suggests that the Appellees' requests for transcript fees duplicate their bills of costs in the circuit court and that the Appellees did not submit proof of the contrary. Moreover, the State disputes the necessity of the transcripts for the Appellees' litigation of the appeal and cross-appeal. Finally, the State argues that ParEn's documents are generally inadequate.

The State attaches over seventy pages of exhibits to each opposition, including what

---

10. "[F]reely translated as 'words of a feather flock together,' that is, the meaning of a word is to be judged by the company it keeps." *Coon v. City & County of Honolulu,* 98 Hawai'i 233, 256, 47 P.3d 348, 371 (2002) (citations and internal quotation signals omitted); *see also* HRS § 1–15(1) ("The meaning of . . . ambiguous words may be sought by examining the context, with which the ambiguous words . . . may be compared, in order to ascertain their true meaning.").

11. "In construing an act, the title may be resorted to for the purpose of ascertaining the meaning of the act." *Spears v. Honda,* 51 Haw. 1, 17, 449 P.2d 130, 139 (1968).

12. In light of the apparent similarity of *Wong* to the present matter, we note its inapplicability. In *Wong,* the prevailing party had filed a bill of costs with the circuit court, pursuant to HRS § 607–9 and HRCP Rule 54(d), *see supra* note 3. 88 Hawai'i at 48–49, 52, 961 P.2d at 613–14, 617. The losing party had merely objected that the prevailing party "did not demonstrate that the costs were necessary." 88 Hawai'i at 49, 961 P.2d at 614. The circuit court had awarded

an amount of costs that was reduced from the amount requested, but provided no "findings regarding or explanation of the reductions." *Id.* Holding that the circuit court had abused its discretion, we vacated and remanded for "determination of the appropriate amount due to [the prevailing party] for costs." 88 Hawai'i at 48, 55, 961 P.2d at 613, 620. We expressly limited our holding in *Wong* to requests in civil cases "pursuant to HRCP Rule 54(d) and HRS § 607–9." 88 Hawai'i at 54 n. 7, 961 P.2d at 619 n. 7.

Even assuming *arguendo* that we were to (1) extend the *Wong* rule to apply in the appellate context under HRAP Rule 39, *see supra* note 3, and (2) disregard the State's objections in this case, *Wong* did not hold that all unopposed requests for costs must be granted, but rather that: (1) expenses, *"if* deemed reasonable by the court," should be reimbursed; and (2) if the circuit court denies a request for costs it must offer an "explanation or a readily discernible rationale." 88 Hawai'i at 48, 53–54, 961 P.2d at 613, 618–19 ("[The prevailing party] would have to demonstrate a compelling rationale for the court to grant [routine expenses related to operating a law practice] . . . .") (emphasis added).

appear to be the Appellees' verified bills of costs filed in the circuit court. ParEn's bill of costs apparently stated to the circuit court that ParEn incurred "[t]rial transcript costs" of $2,016.25. HGG apparently requested $18,657.61 for "[f]ees for court reporter and deposition transcripts for all or any part of trial transcripts necessarily obtained for use in this case." Nonetheless, the State has not shown which, if any, such transcripts are duplicative of those used in the present appeal. In any case, the Appellees' obtaining transcripts to prepare for litigation was reasonably necessary inasmuch as the State's appeal and ParEn's cross-appeal challenged the evidentiary sufficiency of the circuit court's findings of negligence.

Nevertheless, we agree with the State that "ParEn has not explained the discrepancy between the" amount it has documented, $323.54,[13] and its requested total of $325.54, although the discrepancy may be the result of a simple typographical error. Accordingly, we award only $323.54 to ParEn.

### b. *Filing fees*

■ The State contends that the filing fees requested by ParEn are duplicative and/or that ParEn "did not disclose the purpose for paying the filing fees and when the filing fees were paid." Nor, argues the State, does ParEn prove which court charged the fee(s) "or how the fee relates to this appeal."

Inasmuch as appeals by non-indigent parties generally require prepayment of fees, the "why," "when," and "to whom" are self-evident as to $225.00 of the $327.36 requested. *See* HRAP Rule 45(e)(5) (Supreme Court filing fee of $100.00); HRS §§ 607–5(c)(23) (Supp.2004) (circuit court fee of $100.00 upon filing of notice of appeal), 607–5.7 (Supp.2001) ($25.00 surcharge for indigent legal services); HRAP Rule 3(a), (f) (consequences of failure to pay, including dismissal of appeal). Moreover, the State's

suggestion that ParEn has attempted to double-dip by requesting the same $225.00 in the circuit court is less than candid, and unavailing: through standard and common procedure, the Appellees would have been charged a *different* $225.00 by the circuit court for their initial complaint against HDCC, *see* HRS §§ 607–5(b)(1) (Supp.2004) (filing fee), 607–5.7, *supra* (surcharge), and scrutiny of the State's own exhibit reveals this to be the case (receipts for "COMP/PAREN, INC VS HI DREDGING CONST CO" ($200.00) and "SRCHG/PAREN, INC. VS HI DREDGING CONSTRN" ($25.00)).

Nonetheless, neither ParEn's counsel's declaration nor its copious exhibits document the expenditure of the remaining $102.36. Consequently, we deny ParEn $102.36 of the requested $327.36.

### c. *Copies*

■ ParEn requests $2,159.66 for "[p]rinting/copying of briefs/appendices (# of pages @ .10–.15/page)." The State asserts that the number of pages ParEn claims to have printed is excessive, that fifteen cents per page is an excessive charge, and that, once again, ParEn duplicated its request to the circuit court. We agree with the State that the number of pages alleged is unreasonable.

Assigning a duly broad scope to "briefs and appendices" as used in HRAP Rule 39(c)(4), *see supra* note 3, we need not reimburse a prevailing party for filings other than those briefs encompassed by HRAP Rule 28, including the number of copies required by HRAP Appendix A. ParEn's opening brief was 179 pages long, including appendices, the statement of related cases required by HRAP Rule 28(b)(11), and the certificate of service required by HRAP Rule 28(a). ParEn's answering brief (including attachments as described *supra*) was 148 pages long. Its reply brief (including attachments) was sixteen pages long. All in all, ParEn filed 343 pages pursuant to HRAP Rule 28.[14] HRAP

---

13. ParEn lists two charges apparently related to transcript production, to wit, $112.60 for "Professional Fees–Christine Jordan," and $210.94 for "Court Reporter Fees–Phyllis Tsukayama." ParEn also attaches what appears to be a photocopy of its own ledger, recording the outlays to

Jordan (December 6, 2001) and Tsukayama (December 24, 2001). Consequently, ParEn has reasonably demonstrated expenses of $112.60 plus $210.94, which equals $323.54.

14. The bodies of ParEn's briefs satisfied the page maximums of HRAP Rule 28(a).

Appendix A requires the filing of two copies of each brief, and HRAP Rule 28(a) requires service of two copies upon every other party (in this case, HGG and the State). Allowing reimbursement for all six copies plus one for ParEn's own records, *see* HRAP Appendix A, the total number of pages for which ParEn may obtain reimbursement is still only 7 times 343, or 2401.

Inasmuch as ParEn's three briefs were all filed before July 2002, when its per-page price inexplicably decreased from fifteen cents per page to ten cents, we reimburse ParEn for 2401 pages at fifteen cents per page, which equals $360.15.

The State does not object to HGG's request for $13.60 in copying costs. Inasmuch as HGG's answering brief was thirty-four pages long and HGG was required to produce seven copies, *see supra*, we award the full requested amount of $13.60.[15]

### 4. *Interest*

■ ParEn seeks postjudgment interest on its appellate costs and on the amount of its money judgment against the State, calculated from the date of judgment in the circuit court. (Citing *Taylor–Rice v. State*, 105 Hawai'i 104, 94 P.3d 659 (2004).)

The State counters that its "liability for interest commences from the filing of the Notice and Judgment on Appeal" and that ParEn's request is frivolous and does not cite legal authority. (Citing *Taylor–Rice*, 105 Hawai'i at 112, 94 P.3d at 667; *Littleton v. State*, 6 Haw.App. 70, 708 P.2d 829 (1985).)

In *Taylor–Rice*, we adopted the reasoning of the Intermediate Court of Appeals, which held in *Littleton* that, whenever the State loses a case "instituted under [the State Tort Liability Act]," *see* HRS § 662–8, *supra* note 3, " 'the legislature intended interest to run ... from the date when the judgment is

conclusive, either *after the judgment on appeal* or after the time to appeal from the trial court judgment has expired.' " 105 Hawai'i at 112, 94 P.3d at 667 (quoting 6 Haw.App. at 76, 708 P.2d at 833) (emphasis in original). The losing party in the present matter was the State; hence, the time-period in the more specific HRS § 662–8 ("after the judgment on appeal") trumps the more general HRAP Rule 37 (accruing interest "from the date the judgment was entered in the circuit or district court," with no express exception for sovereign debtors). Inasmuch as (1) ParEn filed its request thirteen days after this court's February 22, 2006 entry of judgment, (2) HGG did not request a proportionate share of the interest, and (3) ParEn's method of computing the interest (simple interest accruing daily in increments of 4% / 365) is reasonable, we hold that ParEn is entitled to thirteen days' interest computed using its own formula: the sum of $1,150,000.00 (judgment), $323.54 (transcripts), $225.00 (filing fees), and $360.15 (copies) is $1,150,908.69. Interest on this amount computed as four percent per year (four 365ths of a percent per day) over thirteen days, rounded to the nearest cent, equals $1,639.65.

### III. *CONCLUSION*

In light of the foregoing analysis, we deny the Appellees' requests as to attorneys' fees and grant them, in part, as to costs. The State is ordered to pay (1) ParEn a total of $2,548.34 for costs and interest and (2) HGG a total of $239.38 for costs.

---

15. HRAP Rule 39(c)(4), *see supra* note 3, provides that "the cost of printing or otherwise producing necessary copies of briefs and appendices ... shall not exceed 20¢ per page." Therefore, a reasonable amount could be as high as 34 pp. * 7 * 20 ¢/p. = $47.60, which is greater than $13.60.