145 P.3d 762

Renee A. TORTORELLO,
Petitioner–Appellee,

v.

Wilson TORTORELLO, Jr.,
Respondent–Appellant.

No. 27459.

Intermediate Court of Appeals of Hawai'i.

June 30, 2006.

Reconsideration Denied Aug. 7, 2006.

Mark S. Kawata and Craig T. Dela Cruz, on the briefs, for Respondent–Appellant.

Theodore Y.H. Chinn and Edie A. Feldman, on the briefs, for Petitioner–Appellee.

BURNS, C.J., and FOLEY, J.; and FUJISE, J., dissenting.

Opinion of the Court by BURNS, C.J.

Respondent–Appellant Wilson A. Tortorello, Jr. (Wilson) appeals from the August 1, 2005 Order For Protection entered in the Family Court of the First Circuit by Judge Darryl Y.C. Choy in favor of Petitioner–Appellee Renee A. Tortorello (Renee). We reverse.

BACKGROUND

At the time of the August 1, 2005 hearing, Renee and Wilson were married and had two minor sons. On June 28, 2005, Renee commenced FC–DA No. 05–1–1291, a proceeding against Wilson pursuant to Hawaii Revised Statutes (HRS) Chapter 586 (Supp.2005)[1],

---

1.  **§ 586–4 Temporary restraining order.** (a) Upon petition to a family court judge, an ex parte temporary restraining order may be granted without notice to restrain either or both parties from contacting, threatening, or physically abusing each other, notwithstanding that a complaint for annulment, divorce, or separation has not been filed. The order may be granted to any person who, at the time the order is granted, is a family or household member as defined in section 586–1 or who filed a petition on behalf of a family or household member....

. . . .

(c) The family court judge may issue the ex parte temporary restraining order orally, if the person being restrained is present in court.

by filing an "Ex Parte Petition for a Temporary Restraining Order for Protection and Statement". In this petition, Renee alleged that:

1. On June 24, 2005, Wilson threatened that "if you take a hard line with me, fine I will make it twice as hard on you."

2. Wilson subjected her to "extreme psychological abuse by: screaming at [her,] calling [her] a "fuckin bitch" repeatedly in front of [her] child, . . . . Wilson attacked [her] sister, . . . in front of [Renee's] 5 yr old [child]—pushed & hit her [sister]. [Wilson] has displayed extreme irrationality & violence." The last date that Wilson did this was on June 14, 2005.

3. She is in immediate danger of Wilson abusing her "because of his extreme irrational & violent behavior" and the fact that "[h]e is very insecure and tries to dominate & invalidate [Renee]."

4. She believes that Wilson would very soon physically harm, injure, or assault her, hurt her family, and take her children to Brazil without her permission.

Judge Paul T. Murakami granted a Temporary Restraining Order (TRO) expiring on September 26, 2005. On July 12, 2005, Judge Matthew J. Viola heard the petition and, when Renee began her testimony, the following discussion occurred:

BY [COUNSEL FOR RENEE]:

Q. [Renee], how long have you been married to [Wilson]?

A. Eight years.

Q. Okay. And during that time, has there been any physical abuse in your relationship?

A. Yes.

[COUNSEL FOR WILSON]: I'm going to object to this line of questioning. The restraining order—we're talking about

The order shall state that there is probable cause to believe that a past act or acts of abuse have occurred, or that threats of abuse make it probable that acts of abuse may be imminent. The order further shall state that the temporary restraining order is necessary for the purposes of: preventing acts of abuse or preventing a recurrence of actual domestic abuse; and ensuring a period of separation of the parties involved. The order shall describe in reasonable detail the act or acts sought to be restrained. . . .

§ 586–5 **Period of order; hearing.** (a) A temporary restraining order granted pursuant to this chapter shall remain in effect at the discretion of the court, for a period not to exceed ninety days from the date the order is granted.

(b) On the earliest date that the business of the court will permit, but no later than fifteen days from the date the temporary restraining order is granted, the court, after giving due notice to all parties, shall hold a hearing on the application requiring cause to be shown why the order should not continue. . . .

The protective order may include all orders stated in the temporary restraining order and may provide further relief, as the court deems necessary to prevent domestic abuse or a recurrence of abuse, including orders establishing temporary visitation with regard to minor children of the parties and orders to either or both parties to participate in domestic violence intervention.

§ 586–5.5 **Protective order; additional orders.** (a) If, after hearing all relevant evidence, the court finds that the respondent has failed to show cause why the order should not be continued and that a protective order is necessary to prevent domestic abuse or a recurrence of abuse, the court may order that a protective order be issued for a further fixed reasonable period as the court deems appropriate.

The protective order may include all orders stated in the temporary restraining order and may provide for further relief as the court deems necessary to prevent domestic abuse or a recurrence of abuse, including orders establishing temporary visitation and custody with regard to minor children of the parties and orders to either or both parties to participate in domestic violence intervention services. . . .

(b) A protective order may be extended for such further fixed reasonable period as the court deems appropriate. Upon application by a person or agency capable of petitioning under section 586–3, the court shall hold a hearing to determine whether the protective order should be extended. In making a determination, the court shall consider evidence of abuse and threats of abuse that occurred prior to the initial restraining order and whether good cause exists to extend the protective order.

The extended protective order may include all orders stated in the preceding restraining order and may provide such further relief as the court deems necessary to prevent domestic abuse or a recurrence of abuse, including orders establishing temporary visitation and custody with regard to minor children of the parties and orders to either or both parties to participate in domestic violence intervention services. The court may terminate the extended protective order at any time with the mutual consent of the parties.

three years ago. I don't think those at this point are relevant.

THE COURT: Those—as I read the Petition, there are no allegations in here regarding physical abuse so I'm constrained to limit the hearing to the matters that are identified in the Petition. Because, otherwise, [Wilson] didn't have notice of those allegations." [2]

. . . .

BY [COUNSEL FOR RENEE]:

Q. I'd like to turn your attention to the reason behind the filing of the Petition for the Temporary Restraining Order. Could you explain to the judge the purpose of the filing of the Temporary Restraining Order, why you felt you needed to file.

A. Yes. An altercation took place on June 14th on the evening, approximately 11:15 p.m.

(Footnote added.)

At the conclusion of the hearing, Judge Viola decided that the evidence was insufficient to show "that an order for protection is necessary to prevent a domestic abuse or a recurrence of domestic abuse" and dissolved the TRO.

On July 19, 2005, Renee commenced FC–DA No. 05–1–1453 by filing an "Ex Parte Petition for a Temporary Restraining Order for Protection and Statement". In this petition, Renee alleged essentially the same facts, fears, and beliefs that she alleged in her June 28, 2005 petition in FC–DA No. 05–1–1291. She further alleged that:

5. Many times in the last six years, Wilson hurt her with an object, and had pushed, grabbed, and shoved her. The last date he did this was May 2005.

6. Wilson maliciously damaged her property by changing all three locks on the doors to her home and the house was a mess. The last date this occurred was July 2005.

Judge Darryl Y.C. Choy entered a TRO expiring on October 17, 2005. On July 27, 2005, Wilson filed a "Memorandum in Opposition to Petitioners [sic] Petition for Tempo-

rary Restrianing [sic] Order for Protection and Statement" in which he contended that [t]his Petition is [Renee's] attempt to revisit and relitigate the unfounded allegations already heard and rejected by the family court. All matter previously litigated on 7/12/05 should be excluded from evidence at the August 1, 2005 hearing on Petitioners [sic] Motion. Further, as the allegations contained in the Petition have had a full hearing and have been found wanting, this matter is res judicata, and Petitioners [sic] Motion should be considered frivolous under [Hawai'i Family Court Rule] 11 and attorneys fees and costs should be awarded.

At a hearing on August 1, 2005, after Judge Choy ruled that "[t]oday's proceeding will not involve the allegations of June 24," there was no admittable evidence regarding allegation no. 1, listed above. With regard to allegation no. 5, listed above, there was evidence of only one incident, and it happened in May 2005. At the conclusion of the hearing, Judge Choy entered an Order for Protection expiring on August 1, 2015.

On August 23, 2005, Wilson filed a notice of appeal. This case was assigned to this court on April 27, 2006.

■■■■ The following is relevant precedent: We quoted in *Ellis v. Crockett*, 51 Haw. 45, 55, 451 P.2d 814, 822 (1969), from a previous opinion of this court in *In re Bishop's Estate*, 36 Haw. 403, 416 (1943), on the effect of res judicata as follows:

"[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided."

*Morneau v. Stark Enterprises, Ltd.*, 56 Haw. 420, 422–23, 539 P.2d 472, 474–75 (1975).

---

2. In other words, the objection asserted by counsel for Respondent–Appellant Wilson A. Tortorello, Jr. was not the basis used by the court for deciding "to limit the hearing to the matters that are identified in the Petition."

Wilson contends that this precedent barred Judge Choy from considering allegation no. 5 and using it as a basis for the August 1, 2005 Order for Protection. The question is whether this precedent applies to successive HRS Chapter 586 (Supp.2005) protective order cases filed by the same petitioner against the same respondent where the second case is based on events that occurred, and that the petitioner knew about, prior to the filing of the first petition? In the answering brief, Renee contends that it does not because a contrary answer "would result in defeating the primary purpose of domestic abuse protection orders—to prevent harm." We agree with Wilson. In the June 28, 2005 petition, Renee alleged that an incident on June 14, 2005, and other actions by Wilson made a protective order necessary to prevent domestic abuse or a recurrence of abuse. At the hearing on July 12, 2005, Wilson showed cause why the order should not be continued and that a protective order was not necessary to prevent domestic abuse or a recurrence of abuse. In the July 19, 2005 petition, Renee re-alleged the allegations stated in the June 28, 2005 petition and added allegations of events happening pre-June 28, 2005, and post-June 28, 2005. The post-June 28, 2005 events are insufficient to support a protective order. With respect to the events happening pre-June 28, 2005, all of the reasons for the res judicata doctrine are applicable. The June 28, 2005 petition presented Renee with her one opportunity to request an Order for Protection for acts and threats of abuse occurring, and that Renee knew about, prior to the filing of her June 28, 2005 petition, and subjected Wilson to his one duty to defend against that request. The June 28, 2005 petition could have and should have included all of Renee's allegations about all past acts of abuse and threats of abuse that made a protective order necessary to prevent domestic abuse or a recurrence of abuse. The Family Court form used by Renee to file both petitions supports this position and is replicated, in part, as follows:

IV. The following incident(s) of domestic abuse has/have happened:

A. [ ] The Defendant has physically harmed, injured or assaulted me by:

    1.[ ] hurting me with an object.    Last Date

    2.[ ] pushing, grabbing, shoving me.    Last Date
    3.[ ] slapping, punching, hitting me.    Last Date
    4.[ ] kicking, biting me.    Last Date
    5.[ ] choking, trying to strangle me.    Last Date
    6.[ ] forcing me to have sex.    Last Date
    7.[ ] other    Last Date

B. [ ] The Defendant has threatened me with physical harm, injury or assault by threatening to:

    1.[ ] kill me.    Last Date
    2.[ ] physically hurt me.    Last Date
    3.[ ] hurt me sexually.    Last Date
    4.[ ] other    Last Date

C. [ ] The Defendant has maliciously damaged my property by:    Last Date

    ....

D. [ ] The Defendant has subjected me to extreme psychological abuse by:    Last Date

Accordingly, we reverse the August 1, 2005 Order for Protection.

### Dissenting Opinion by FUJISE, J.

I must respectfully dissent. The Majority reverses the August 1, 2005 Order For Protection relying in the main on the case of *Morneau v. Stark Enterprises Ltd.*, 56 Haw. 420, 422–23, 539 P.2d 472, 474–75 (1975). Maj. op. at 221, 145 P.3d at 764. With *Morneau*, I have no quarrel, as far as it goes. There, the Hawai'i Supreme Court affirmed the dismissal of a second personal injury case against certain apartment developers and architects who were joined as third-party defendants in a previous personal injury action for the same injury sued for by the same plaintiff. Although the plaintiff could have, but did not, name these third-party defendants as party defendants in the previous action, they were all eventually dismissed out of the previous action and plaintiff "through his own choosing is now precluded in the present action under the doctrine of collateral estoppel from relitigating the same issue which was determined by the judgment in the first action." *Morneau*, 56 Haw. at 424, 539 P.2d at 476.

However, in my view, this appeal turns, not on whether the May 2005 incident should have been litigated in Petitioner–Appellee Renee A. Tortorello's (Renee) June 28, 2005 petition (First Petition), but whether, having effectively prevented her from presenting evidence of any incidents not included in the First Petition, Respondent–Appellant Wilson A. Tortorello, Jr. (Wilson) effectively waived

reliance on the defense of *res judicata* to prevent the consideration of Renee's July 19, 2005 Petition (Second Petition) which relied primarily on the May 2005 incident of physical abuse. Based on the record and the relevant case authority in this jurisdiction, I would affirm the trial court's consideration of the Second Petition.

It appears that Wilson waived his *res judicata* defense insofar as he now argues it is a complete bar to Renee's Second Petition, for two reasons: (1) the record does not reveal that he argued for a complete bar below[1] and (2) a party who actively prevents the litigation of certain claims in the first action should not be heard to complain when a second action is brought to litigate those claims.

In *Solarana v. Indus. Elecs., Inc.*, 50 Haw. 22, 428 P.2d 411 (1967), the first action was dismissed for insufficient evidence supporting the plaintiff's claim that he was owed a specified amount for "goods sold and delivered on or about January 11, 1964." *Id.*, 50 Haw. at 23, 428 P.2d at 413 (internal quotation marks omitted). The plaintiff's theory of his case was that the sale was consummated on January 11, 1964, as reflected in a document of even date, entitled "special billing," although the goods had been delivered earlier. The trial court agreed with the defendant's argument that the special billing was irrelevant and should be excluded because anything delivered before that date was immaterial to the complaint and "unless it is a delivery on or about January 11, it is purely irrelevant and immaterial." *Id.*, 50 Haw. at 23, 428 P.2d at 413 (internal quotation marks omitted). The court also denied the plaintiff's motion for leave to amend his complaint based on defendant's objection. The question of whether the goods were sold or delivered on earlier dates was not considered and it does not appear that the plaintiff appealed from this dismissal.

The plaintiff brought a second action for the same amount, this time alleging that the sales of goods took place between October 11, 1961 and March 9, 1963. The second action was dismissed, upon the defendant's motion, on the grounds of *res judicata* based on the dismissal of the first action.

In considering the plaintiff's appeal from the dismissal of the second action, the Hawai'i Supreme Court examined the case of *Carr v. Preslar*, 73 S.D. 610, 47 N.W.2d 497 (1951). There, the court prevented the plaintiffs—although there was no express objection by the defendant but rather an argument for a decision on the current state of the pleadings—from adding a claim to their first complaint. As a result, plaintiffs' claim was never tried on the merits. No appeal was taken from the judgment. Instead, a second action, based on the unadjudicated claim, was dismissed by the trial court. The defendant argued on appeal that, even if the first judgment was in error, plaintiffs' remedy was an appeal from that judgment, and the unchallenged first judgment stood as a bar to the second suit. The South Dakota Supreme Court concluded:

> The doctrine of res judicata which [the defendant] would now employ to bar such a trial has been said to rest on two maxims, viz., 'A man should not be twice vexed for the same cause' and 'it is for the public good that there be an end to litigation.' Freeman on Judgments, § 626; *Fayer-*

---

1. Prior to the hearing on Petitioner–Appellee Renee A. Tortorello's (Renee) July 19, 2005 Petition (Second Petition), Respondent–Appellant Wilson A. Tortorello, Jr. (Wilson) filed a memorandum in opposition on July 27, 2005, arguing, in pertinent part,

> This Petition is wife's attempt to revisit and relitigate the unfounded allegations already heard and rejected by the family court. All matter previously litigated on 7/12/05 should be excluded from evidence at the August 1, 2005 hearing on Petitioners [sic] Motion [sic]. Further, as the allegations contained in the Petition have had a full hearing and have been found wanting, this matter is res judicata[.]

At the August 1, 2005 hearing on the Second Petition, Wilson asserted:

> This is pretty much a rehash. And at least of all of those allegations that we've already litigated that contained in, um, well, that last hearing (inaudible) excluded from consideration. And the only thing the court should hear at this point is anything that happened after July 12, 2005 [sic].

Neither of these formulations state the position Wilson takes now, that the adjudication of the First Petition precludes consideration of the Second Petition in its entirety.

*weather v. Ritch,* 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193. To permit the present use of the doctrine does more than protect [the defendant] from being twice vexed. It makes it possible for him to succeed in defeating [the plaintiffs] in their efforts to secure a fair opportunity to place their claim in litigation on its merits. In our opinion neither justice nor sound public policy would be served by such a ruling. We therefore hold that the trial court erred in sustaining the defense of res judicata.

*Carr,* 73 S.D. at 619–20, 47 N.W.2d at 502–03. Finding the *Carr* case "in point," the Hawai'i Supreme Court in *Solarana* adopted "the waiver doctrine" and noted that its application did not depend on a representation by either counsel or the trial court that "another suit would lie, where as here that is the implication." 50 Haw. at 27, 428 P.2d at 415. It should be noted that in neither *Solarana,* nor *Carr* or *United Bank & Trust Co. of California v. Hunt,* 1 Cal.2d 340, 34 P.2d 1001 (1934), upon which the court in *Solarana* relied, was there an express agreement that the plaintiffs would be allowed to bring another lawsuit on their related claims or evidence. Indeed, the *Solarana* court quoted with approval language in *United Bank:* "The course pursued by court and counsel . . . was tantamount to an express determination on the part of the court with the consent of opposing counsel to reserve the issues involved for future adjudication. . . . Litigants cannot successfully assume such inconsistent positions." *Solarana,* 50 Haw. at 27, 428 P.2d at 415 (internal quotation marks omitted). In resolving its own case, the *Solarana* court concluded:

> it cannot have been contemplated that the bar of res judicata would be invoked in

another suit, causing plaintiff to suffer the forefeiture [sic] of his right to a hearing on his claim that sales occurred at dates earlier than January 11, 1964, which date was deemed determinative of the scope of the then pending suit.

> We therefore are of the opinion that contrary to defendant's contentions the equities do not lie with it. Under the circumstances of this case we sustain plaintiff's contention that: 'A judgment is not res judicata as to issues raised in a previous case which were . . . matters which a court expressly refused to determine.'

*Solarana,* 50 Haw. at 27–28, 428 P.2d at 415–16.

Renee's First Petition alleged incidents that occurred on June 14 and 24, 2005 [2] as her basis.[3] At the hearing on the First Petition, Wilson objected to Renee's testimony regarding the "line of questioning" concerning the frequency and nature of the physical abuse and the first trial court ruled that, as there were no allegations of physical abuse in the petition, the evidence would be limited to those allegations stated in the petition. As a result, Wilson, who was well aware of the limitation placed on Renee's proof, was able to argue that the evidence Renee presented did not show "physical abuse. There's none alleged here. There's none that's been admitted into evidence today so there's no issue of him hurting her physically," and consisted of "one incident." Ultimately, the court denied the First Petition, for a failure of proof, as so limited. In defending against the Second Petition, Wilson sought to prevent relitigation of the matters considered in the First Petition and that request was granted by the second trial court.[4] *See* n. 1 *supra.* To the extent Wil-

---

**2.** Although the dates specified for the incidents of abuse in the June 28, 2005 petition (First Petition) were "6.24.05" and "6.14.05," the testimony by both Renee and Wilson was largely about events occurring on June 14, 2005.

**3.** Renee's First Petition consisted of a preprinted form which was filled in by hand. The section that provided for the factual basis for the petition as set out in the Majority's opinion, op. at 222, 145 P.3d at 765, only asks for the "Last Date" for each type of conduct and nowhere states that all

prior examples of domestic abuse must be reflected on this form. Although Renee apparently obtained some assistance filling out the form, it is unclear from the record who provided this assistance, except that the person was not an attorney, or what the assistance consisted of.

**4.** After comparing the First Petition with the Second Petition, the second trial court ruled that it would consider allegations in sections IV(A), (B)(2), (C), and V as they differed from the allegations presented in the First Petition. Where

son's intent was to preclude any consideration of the Second Petition, the trial court properly rejected this position, limiting Renee's presentation to those matters not previously raised in the First Petition.

Finally, my resolution of this case would require the consideration of Wilson's third point of error. Relying on *Doe v. Doe*, 98 Hawai'i 144, 44 P.3d 1085 (2002), Wilson argues that the trial court abused its discretion by limiting the presentation of evidence in the hearing on the Second Petition to thirty minutes per side. However, the court in *Doe* expressly held that, absent plain error, "if counsel believe that relevant evidence must be heard after the time set for the hearing has expired, they must move for an extension of time." [5] *Doe*, 98 Hawai'i at 154, 44 P.3d at 1095. Wilson did not so move the second trial court, nor does he claim plain error on appeal. As in *Doe*, Wilson has failed to show the second trial court erred in so limiting the presentation of evidence.

I would affirm.

dates were given, the matters the second trial court considered were alleged to have occurred in May and July 2005.

5. The court in *Doe v. Doe*, 98 Hawai'i 144, 44 P.3d 1085 (2002), held that the trial court erred by denying the appellant's motion to reopen proceedings for the purpose of presenting the appellant's previously excluded witnesses. While both parties were given equal time in their examination of the witnesses that were heard, appellee, who had four different witnesses and two more in common with appellant, had all of his witnesses heard. Based on the evidence presented, the trial court found that the evidence of the alleged abuse by appellee was "inconclusive."