153 P.3d 1117

Renee A. **TORTORELLO,**
Petitioner/Petitioner–
Appellee,

v.

Wilson **TORTORELLO, Jr.,**
Respondent/Respondent–
Appellant.

No. 27459.

Supreme Court of Hawai'i.

March 7, 2007.

---

**434**

Theodore Y.H. Chinn and Edie A. Feldman, on the briefs, for petitioner/petitioner-appellee.

Mark S. Kawata and Craig T. Dela Cruz, on the briefs, for respondent/respondent-appellant.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

On February 16, 2007, this court accepted petitioner/petitioner-appellee Renee A. Tor-

torello's (Wife) timely application for writ of certiorari, filed January 16, 2007, requesting this court to review the Intermediate Court of Appeals' (ICA) opinion in *Tortorello v. Tortorello*, 112 Hawai'i 219, 145 P.3d 762 (App.2006), filed June 30, 2006, and the ICA's order granting respondent/respondent-appellant Wilson Tortorello, Jr.'s (Husband) request for costs in the amount of $628.41, filed September 13, 2006. In its published opinion, the ICA reversed the Family Court of the First Circuit's August 1, 2005 order for protection [1] in favor of Wife and against respondent/respondent-appellant Wilson Tortorello, Jr. (Husband).[2]

In her application, Wife contends, *inter alia*, that the ICA erred in applying the doctrine of *res judicata* to the instant case. Wife also asserts that the ICA's decision should be applied prospectively. Lastly, Wife maintains that the ICA erred in awarding costs incurred on appeal in favor of Husband.

For the reasons discussed below, we affirm the ICA's October 18, 2006 judgment on appeal with respect to the merits of Husband's appeal. We vacate, however, the ICA's award of costs to Husband and, instead, award costs in the amount of $280.80 in favor of Husband as against Wife.

## I. BACKGROUND

### A. Petition I

At all times relevant herein, Husband and Wife were married and have two minor children. On June 28, 2005, Wife filed an "Ex Parte Petition for a Temporary Restraining Order for Protection and Statement" in the family court, pursuant to Hawai'i Revised Statutes (HRS) chapter 586 (relating to domestic abuse protective orders) [3] [hereinaf-

---

1. The Honorable Darryl Y.C. Choy presided over the underlying proceedings unless otherwise indicated.

2. The ICA's judgment on appeal was entered on October 18, 2006. We note that the judgment on appeal does not include any reference to the ICA's award of costs in favor of Husband and as against Wife.

3. HRS § 586-4 (2006) provides in relevant part:

(a) Upon petition to a family court judge, an ex parte temporary restraining order may be granted without notice to restrain either or both parties from contacting, threatening, or physically abusing each other, notwithstanding that a complaint for annulment, divorce, or separation has not been filed....

....

(c) The family court judge may issue the ex parte temporary restraining order orally, if the person being restrained is present in court.

ter, Petition I].[4] The ICA summarized Wife's allegations in Petition I as follows:

1. On **June 24, 2005,** [Husband] threatened that[,] "if you take a hard line with me, fine[,] I will make it twice as hard on you."

2. [Husband] subjected her to "extreme psychological abuse by: screaming at [her,] calling [her] a 'fuckin bitch' repeatedly in front of [her] child[ ].... [Husband] attacked [her] sister[ ] ... in front of [Wife's five year] old [child]—pushed & hit her [sister]. [Husband] has displayed extreme irrationality & violence." The last date [Husband] did this was on **June 14, 2005.**

3. She is in immediate danger of [Husband] abusing her "because of his extreme irrational & violent behavior" and the fact that "[h]e is very insecure and tries to dominate & invalidate [Wife]."

4. She believes that [Husband] would very soon physically harm, injure, or assault her, hurt her family, and take her children to Brazil without her permission. [5]

*Tortorello v. Tortorello,* 112 Hawai'i 219, 220, 145 P.3d 762, 763 (2006) (some brackets and ellipses in original) (bold emphases added). On the same day (June 28, 2005), the family court, the Honorable Paul T. Murakami presiding, granted a temporary restraining order (TRO) to Wife, with an expiration date of September 26, 2005.

On July 12, 2005, a show cause hearing as to why the TRO should not continue was held by the family court.[6] At the hearing, the following colloquy ensued when Wife commenced her testimony:

Q: [By Wife's counsel] [Wife], how long have you been married to [Husband]?

A: [By Wife] Eight years.

Q: Okay. And during that time, has there been any physical abuse in your relationship?

A: Yes.

Q: And what has been the frequency of the abuse and what has happened?

A: About three times a year when an issue would come up and I wanted to discuss it, it would—

[Counsel for Husband]: I'm going to object to this line of questioning. The restraining order—we're talking about three years ago. *I don't think those at this point are relevant.*

THE COURT: *Those—as I read ... Petition [I], there are no allegations in here regarding physical abuse so I'm constrained to limit the hearing to the matters that are identified in ... Petition [I]. Because, otherwise, [Husband] didn't have notice of those allegations.*

Q: [By Wife's counsel] I'd like to turn your attention to ... Petition [I].

THE COURT: So anyways—pardon me—the objection is sustained.

Q: [By Wife's counsel] I'd like to turn your attention to the reason behind the filing of ... Petition [I]. Could you explain to the judge the purpose of the filing of ... Petition [I], why you felt you needed to file.

A: [By Wife] Yes. An altercation took place on June 14th on the evening, approximately 11:15 p.m.

(Emphases added.) At the conclusion of the hearing, the family court ruled that Wife had "not met her burden of proving that an order for protection is necessary to prevent a domestic abuse or a recurrence of domestic abuse. And that [Husband] has shown cause as to why the [TRO] should not continue." Consequently, the family court dissolved the TRO.

**B. *Petition II***

On July 19, 2005, Wife filed a second "Ex Parte Petition for a Temporary Restraining Order for Protection and Statement" in the

---

The order shall state that there is probable cause to believe that a past act or acts of abuse have occurred, or that threats of abuse make it probable that acts of abuse may be imminent.

**4.** It appears that Wife completed the form utilized as Petition I without assistance of counsel.

**5.** According to Wife, Husband "has dual citizenship in Brazil."

**6.** The Honorable Matthew J. Viola presided over the instant hearing.

family court [hereinafter, Petition II]. In Petition II, Wife essentially alleged the same "facts, fears, and beliefs" that she alleged in Petition I. *Id.* at 221, 145 P.3d at 764. Wife, however, included additional allegations in Petition II that were not made in the earlier Petition I. The ICA summarized Wife's further allegations in Petition II as follows:

> 5. Many times in the last six years, [Husband] hurt her with an object, and had pushed, grabbed, and shoved her. The last date he did this was **May 2005**.
>
> 6. [Husband] maliciously damaged her property by changing all three locks on the doors to her home and the house was a mess. The last date this occurred was **July 2005**.

*Id.* (bold emphases added).[7] On the same day, the family court entered a TRO against Husband, with an expiration date of October 17, 2005.

On July 27, 2005, Husband filed a memorandum in opposition to Petition II. Husband contended that:

> Petition [II] is [W]ife's attempt to revisit and relitigate the unfounded allegations already heard and rejected by the family court. All matter [sic] previously litigated on 7/12/05 should be excluded from evidence at the [upcoming] hearing on [Petition II]. Further, as the allegations contained in ... Petition [II] have had a full hearing and have been found wanting, this matter is *res judicata* [.]
>
> . . . .
>
> [Wife] alleges no new contact in her written filings which would provide the basis for a new Order for Protection. [Wife] has had ample opportunity to litigate the circumstances prior to the 7/12/05 hearing, and her request for an[ ] Order of Protection was found wanting. She now files a second request for [an] Order of Protection yet alleges no new contact with [Husband] which provide the basis for the Order. She simply wants a second bite at the apple.

On August 1, 2005, a show cause hearing as to why the TRO should not continue was held by the family court. At the hearing, the family court initially ruled that "[t]oday's proceeding will not involve the allegations of June 24[, 2005, *i.e.*, allegation No. 1]." As such, there was no evidence admitted with regard to allegation No. 1 at the hearing. The parties presented evidence with respect to allegation No. 5, specifically focusing on one incident occurring in May 2005. *Id.* (stating that, "[w]ith regard to allegation [N]o. 5, ... there was evidence of only one incident, and it happened in May 2005"). At the conclusion of the hearing, the family court entered an order for protection, set to expire on August 1, 2015. On August 23, 2005, Husband filed a timely notice of appeal.

## C. ICA Appeal and Disposition

On appeal before the ICA, Husband maintained that the family court "erred in allowing [Wife] to proceed with [Petition II] because such re-litigation was barred by *res judicata.*" Husband asserted that the family court reviewed Petition I and Petition II "and decided that whatever allegations were not made in the text of [Petition I] were permissible as claims to be decided in the hearing on [Petition II]. The [family c]ourt did not take into consideration whether any of the claims made in [Petition II] could have been asserted in [Petition I]." Husband argued that:

> [R]es judicata requires that a [p]etitioner is required to assert all claims that "might have been properly asserted in the first action," or risk the bar of *res judicata* in any subsequent action involving the same parties. The idea behind the rule is to avoid multiple suits and to encourage parties to resolve all of their disputes in as few cases as possible, so as to encourage proper use of judicial resources....
>
> Permitting multiple petitions will wreak havoc on our judicial system. Claimants can, and will, after losing a [p]etition, re-file it, as [Wife] did here (within three weeks), adding a few new facts or allega-

---

7. We note that the ICA numbered the additional allegations contained in Petition II as "5" and "6" to continue from the initial four allegations made in Petition I. We believe the ICA numbered the allegations as such in order to refer to the allegations by number in its opinion.

tions, and claim that they had forgotten to make such allegations and claims, and be allowed, as the [family c]ourt did in this case, until they have attained their desired result.

The "new claims" that [Wife] put into [Petition II] could have been asserted in [Petition I]. The "new claims" for the most part, occurred in May[ ] 2005. [Petition I] was filed on June 28, 2005. Thus, as of the filing date of [Petition I], all of the new and unasserted claims (in [Petition I] ), were known to [Wife] at the time she filed [Petition I] and failed to make the appropriate allegations. . . .

As such, *res judicata* precludes relitigation of an application for [a] restraining order, based upon allegedly wrongful conduct that was supposed to have taken place prior to the date of execution of [Petition I] on June 28, 2005. All of the "new claims" pre-dated June 28, 2005. Hence, all claims in [Petition II] should have been barred.

Husband also contended that the family court erred "in allowing [Wife] to proceed with [Petition II] because such re-litigation was barred by collateral estoppel." Finally, Husband contended that the family court erred in "restricting the trial time of each party because to do so unduly restricted [Husband's] ability to present evidence and make appropriate and cogent argument, and thereby properly present a defense."

On June 30, 2006, the ICA issued its published opinion, reversing the family court's August 1, 2005 order for protection. The majority held that the doctrine of *res judicata* "applies to successive HRS [c]hapter 586 . . . protective order cases filed by the same petitioner against the same respondent where the second case is based on events that occurred, and that the petitioner knew about, prior to the filing of the first petition[.]" *Id.* at 222, 145 P.3d at 765. Specifically, the ICA stated:

In the June 28, 2005 petition[, *i.e.*, Petition I], [Wife] alleged that an incident on June 14, 2005, and other actions by [Husband] made a protective order necessary to prevent domestic abuse or a recurrence of abuse. At the hearing on July 12, 2005,

[Husband] showed cause why the order should not be continued and that a protective order was not necessary to prevent domestic abuse or a recurrence of abuse. In the July 19, 2005 petition[, *i.e.*, Petition II], [Wife] re-alleged the allegations stated in [Petition I] and added allegations of events happening pre-June 28, 2005, and post-June 28, 2005. The post-June 28, 2005 events are insufficient to support a protective order. With respect to the events happening pre-June 28, 2005, all of the reasons for the *res judicata* doctrine are applicable. [Petition I] presented [Wife] with her one opportunity to request an [o]rder for [p]rotection for acts and threats of abuse occurring, and that [Wife] knew about, prior to the filing of [Petition I], and subjected [Husband] to his one duty to defend against that request. [Petition I] could have and should have included all of [Wife's] allegations about all past acts of abuse and threats of abuse that made a protective order necessary to prevent domestic abuse or a recurrence of abuse.

*Id.* Lastly, the majority stated that the family court form utilized by Wife to file Petitions I and II supports its position of applying *res judicata* to the instant case and replicated the relevant portion of the form in its opinion. *Id.*

ICA Associate Judge Fujise issued a dissenting opinion, stating that she would affirm the August 1, 2005 order for protection (the dissent). According to the dissent,

this appeal turns, not on whether the May 2005 incident should have been litigated in [Petition I], but whether, having effectively prevented her from presenting evidence of any incidents not included in [Petition I], [Husband] effectively waived reliance on the defense of *res judicata* to prevent the consideration of [Petition II] which relied primarily on the May 2005 incident of physical abuse.

*Id.* at 222–23, 145 P.3d at 765–66 (Fujise, J., dissenting). The dissent maintained that:

It appears that [Husband] waived his *res judicata* defense insofar as he now argues it is a complete bar to [Petition II], for two reasons: (1) the record does not reveal

that he argued for a complete bar below[;] and (2) a party who actively prevents the litigation of certain claims in the first action should not be heard to complain when a second action is brought to litigate those claims.

*Id.* at 223, 145 P.3d at 766 (Fujise, J., dissenting) (footnote omitted).

On July 31, 2006, Wife moved for reconsideration of the ICA's published opinion. The ICA entered an order denying Wife's motion for reconsideration on August 7, 2006. On August 25, 2006, Husband moved for an award of costs incurred on appeal in the amount of $628.41. On September 12, 2006, Wife filed her objections to Husband's request for costs, contending that Husband's request was untimely filed and that Husband failed to "provide any statements of authority for the requested items for cost and ... fail[ed] to provide copies of invoices, bills, vouchers[,] or receipts." On September 13, 2006, the ICA entered an order granting Husband's request for costs in its entirety, *i.e.*, $628.41. The ICA's order expressly indicated that it considered Wife's objections to Husband's request.

On October 18, 2006, the ICA entered its judgment on appeal. *See also supra* note 2. Wife timely filed her application for writ of certiorari on January 16, 2007. Husband did not file a response.

## II. *STANDARD OF REVIEW*

The acceptance or rejection of an application for writ of certiorari is discretionary. HRS § 602–59(a) (Supp.2006). In deciding whether to accept an application, this court reviews the decision of the ICA for (1) grave errors of law or of fact or (2) obvious inconsistencies in the decision of the ICA with that of the supreme court, federal decisions, or its own decision and whether the magnitude of such errors or inconsistencies dictate the need for further appeal. HRS § 602–59(b).

## III. *DISCUSSION*

As previously mentioned, Wife contends that the ICA erred in applying the doctrine of *res judicata* to the instant case. Wife also argues that "the form promulgated by the

Judiciary under HRS [c]hapter 586 failed to explicit [sic] warn [Wife] that she had only 'one opportunity' to petition for a protective order." Moreover, Wife asserts that the ICA's decision should be applied prospectively. Finally, Wife alleges that the ICA erred in awarding costs in favor of Husband. Each of Wife's contentions will be addressed in turn.

### A. *Res Judicata*

Preliminarily, Wife asserts that Husband waived the defense of *res judicata.* Wife also argues that "the ICA erred in failing to apply the proper *res judicata* analysis as set forth by the Hawai'i Supreme Court." And, Wife argues that "[t]he application of *res judicata* has been soundly rejected in other jurisdictions in domestic abuse protection order proceedings."

### 1. Waiver

■ Wife maintains that this court's decision in *Solarana v. Industrial Electronics, Inc.,* 50 Haw. 22, 428 P.2d 411 (1967), "compels a conclusion that [Husband] had waived the *res judicata* defense." In *Solarana,* this court held that:

> The defense of *res judicata* will be deemed to have been waived when based on a judgment of dismissal in a prior suit in which, on defendant's insistence, the subject matter of the second suit was excluded from consideration as being outside the scope of the pleadings *and plaintiff was precluded from amending to include it,* the implication being that another suit would lie.

*Id.* at 22, 428 P.2d at 412 (emphasis added).

At the July 12, 2005 show cause hearing on Petition I in this case, Husband objected to Wife's attempt to introduce evidence of instances of physical abuse—the subject matter of Petition II—on the basis of relevance. The family court sustained the objection, stating that, "as I read ... Petition [I], there are no allegations in here regarding physical abuse so I'm constrained to limit the hearing to the matters that are identified in ... Petition [I]. Because, otherwise, [Husband] didn't have notice of those allegations." As

such, the family court excluded from consideration the instances of physical abuse as being outside the scope of the pleadings, i.e., Petition I. Wife, however, was *not* precluded from amending Petition I to include the instances of physical abuse. In fact, Wife does not point to anywhere in the record to indicate that she sought leave from the family court to amend Petition I in order to include the instances of physical abuse. *See* Hawai'i Family Court Rules (HFCR) Rule 15 (2007).[8] Consequently, under the circumstances of this case, the doctrine of *res judicata* has not been waived by Husband.

### 2. Applicability of *Res Judicata*

■ Wife next contends that "the May and June abuse incidents were not the same transaction or series of transactions, as the term 'transaction' is used and defined in applying the doctrine of *res judicata*." (Emphasis in original omitted.) Although not entirely clear, it appears that Wife is arguing that, because the instances of physical abuse that allegedly occurred in May 2005 did not arise from the "same transaction or series of transactions" as the instances of psychological abuse of Wife and physical abuse of Wife's sister that allegedly occurred in June 2005, *res judicata* is inapplicable to this case.

■ *Res judicata*, or claim preclusion, is a doctrine "that limit[s] a litigant to one opportunity to litigate aspects of the case to prevent inconsistent results and multiplicity of suits and to promote finality and judicial economy." *Bremer v. Weeks*, 104 Hawai'i 43, 53, 85 P.3d 150, 160 (2004) (citation and footnote omitted). *Res judicata* "prohibits a party from relitigating a previously adjudicated cause of action." *Id.* (internal quotation marks and citation omitted). In addition,

> the judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning *the same subject matter*, and

precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of *all grounds of claim* and defense *which might have been properly litigated in the first action* but were not litigated or decided.

*Id.* at 53–54, 85 P.3d at 160–61 (citation, brackets, and some emphases omitted) (some emphases added). Finally,

> [t]he party asserting claim preclusion has the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) *the claim decided in the original suit is identical with the one presented in the action in question.*

*Id.* at 54, 85 P.3d at 161 (emphasis added).

In her application, Wife does not dispute that the first and second prongs of *res judicata* are met in the present case. Instead, Wife appears to believe that the claim decided in the "original suit," i.e., Petition I, is not identical with the one presented in "the action in question," i.e., Petition II. However, as Husband aptly pointed out in his reply brief on appeal, "[t]he claim in both Petitions is based upon entitlement to a restraining order/[o]rder of [p]rotection." Inasmuch as both Petitions sought an order of protection against Husband, the claim decided in Petition I is identical with the one presented in Petition II. Accordingly, we do not believe the ICA committed "grave errors of law or fact" or that the ICA's decision contains any "obvious inconsistencies" dictating the need for further appeal with regard to this issue.

### 3. Domestic Abuse Protection Order Proceedings in Other Jurisdictions

Wife also contends that "other jurisdictions have soundly rejected the application of *res judicata* when the enforcement would result in defeating the primary purpose of domestic

---

8. HFRC Rule 15 provides in relevant part:

> (a) *Amendments.* A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

(Emphasis in original.)

abuse protection orders—to prevent harm." In support, Wife relies on four cases: (1) *Liu v. Striuli*, 36 F.Supp.2d 452 (D.R.I.1999) (applying Rhode Island law); (2) *Hoff v. Brown*, No. 2000CA00315, slip op., 2001 WL 876228 (Ohio Ct.App.2001) (unpublished); (3) *Skiles v. Dearth*, Nos. 2000–CA–30, 00–DR–0252, slip op., 2000 WL 1838747 (Ohio Ct.App.2000) (unpublished); and (4) *Muma v. Muma*, 115 Wash.App. 1, 60 P.3d 592 (2002).

In her answering brief on appeal, Wife relied on the aforementioned four cases in support of the same proposition she advocates in her application, *i.e.*, that *res judicata* should not be applied when it "would result in defeating the primary purpose of domestic abuse protection orders—to prevent harm." Clearly, the ICA either (1) considered the four cases but rejected their application to the instant case or (2) did not consider the four cases in rendering its decision. As previously mentioned, in deciding whether to accept an application for writ of certiorari, we review the decision of the ICA for, *inter alia*, obvious inconsistencies in the decision of the ICA with that of the supreme court, federal decisions, or its own decision and whether the magnitude of such errors or inconsistencies dictate the need for further appeal. Three of the four cases cited by Wife were rendered by the Ohio and Washington Courts of Appeals and, thus, are not binding on the ICA. Although *Liu* is a federal decision, the United States District Court for the District of Rhode Island applied Rhode Island law in its analysis of *res judicata* to the facts of that case. Consequently, the ICA was not obligated to follow any of these four cases because none of them are considered controlling authority. Accordingly, it cannot be said that the ICA's decision contains any "obvious inconsistencies" with that of the supreme court, federal decisions, or its own decision that dictate the need for further appeal with regard to this issue.

**B.** *The Family Court Form Utilized as Petitions I and II*

█ As previously indicated, Wife asserts that "the form promulgated by the Judiciary under HRS [c]hapter 586 failed to explicit [sic] warn [Wife] that she had only 'one opportunity' to petition for a protective order." Specifically, Wife argues that the ICA's decision establishes "a bright line rule that petitions for orders of protection filed under [HRS c]hapter 586 must include all acts or threats of abuse committed prior to the filing of the petition and that any failure to do so will result in an absolute bar from raising them in a subsequent petition to support the issuance of an order for protection." (Emphases in original omitted). Wife asserts that such "an absolute bar" was "never made clear in either on the Judiciary form itself or by Judiciary personnel." (Emphasis in original omitted). Wife argues:

> In HRS [c]hapter 586, the Legislature promulgated a statutory requirement that petitioners for order[s] of protection are required to use forms provided by the Judiciary. In effect, this statutory requirement charged the Judiciary with the task of creating forms upon which petitioners must use to petition the court for orders of protection. Additionally, the Legislature charged the Judiciary to provide assistance to petitioners in completing these forms. HRS § 586–3 [ (2006) ] ("petition for relief shall be in writing upon forms provided by the court" and the "family court shall designate an employee or appropriate nonjudicial agency to assist the person in completing the petition." (Emphasis added.)) Consequently, the forms or the assistance must properly and adequately advise a petitioner, especially a *pro se* petitioner, of her one opportunity. In this context, [Wife] submits that[,] in effect[,] the Legislature has charged the Judiciary to perform a function that is analogous to an agency function.

(Emphases in original omitted). Accordingly, Wife maintains that, "[i]n the context of agency actions, the Hawai'i Supreme Court has ruled that[,] '[b]efore a right to relief is barred . . . , the agency process ought to be of such a nature as to impress fully on the litigant the opportunity for recourse it supplies and the consequence of failure to seek such recourse.' " (Citing *Hawai'i Blind Vendors Ass'n v. Dep't of Human Servs.*, 71 Haw. 367, 374, 791 P.2d 1261, 1265 (1990) [hereinafter, *Hawai'i Blind Vendors* ], *overruled on other grounds by Tamashiro v.*

*Dep't of Human Servs.*, 112 Hawai'i 388, 146 P.3d 103 (2006).)

As previously stated, the majority opinion concluded that Petition I "could have and should have included all of [Wife's] allegations about all past acts of abuse and threats of abuse that made a protective order necessary to prevent domestic abuse or a recurrence of abuse." *Tortorello*, 112 Hawai'i at 222, 145 P.3d at 765. The majority opinion also stated that the family court form utilized by Wife to file Petitions I and II "supports [its] position[.]" *Id.* Indeed, a review of Petition I indicates that Wife left that portion of the form requesting information on "incident(s) of domestic abuse [that] has/have happened" *blank.* In Petition II, however, Wife completed that portion of the form to indicate that she was physically abused in May 2005. To conclude as Wife desires in this case, that is, to allow the filing of successive petitions based on alleged past acts of abuse that could have been indicated in the earlier petition, would result in clogging the family courts with excessive hearings and straining the resources of not only the parties, but of the family and appellate courts of this state. Such potential problems are recognized in the policies behind *res judicata,* which, as previously mentioned, is a doctrine "that limit[s] a litigant to one opportunity to litigate aspects of the case *to prevent inconsistent results and multiplicity of suits and to promote finality and judicial economy.*" *Bremer*, 104 Hawai'i at 53, 85 P.3d at 160 (citation and footnote omitted) (emphasis added).

Moreover, we cannot agree with Wife's implicit assertion that domestic abuse protection order proceedings are somehow transformed into agency actions because "the Legislature has charged the Judiciary [with] perform[ing] a function that is analogous to an agency function." Wife does not present any argument as to *how* the legislature's directive in HRS § 586–3 that the family court designate an employee or appropriate non-judicial . agency to provide court users with what seemingly amounts to clerical assistance with court forms "is analogous to an agency function." Moreover, domestic abuse protection order proceedings, like the present case, are governed by HRS chapter 586.

More specifically, under HRS § 586–2 (2006), entitled "Court jurisdiction," "[a]n application for relief under this chapter may be filed in any *family court in the circuit court* in which the petitioner resides. Actions under this chapter shall be given docket priorities *by the court.*" (Emphases added.) Thus, the present domestic abuse protection order proceeding is clearly an adjudication by a court of law, not by an agency. Consequently, *Hawai'i Blind Vendors* is not applicable to this case. Accordingly, the ICA did not gravely err with respect to this issue.

## C. *Prospective Application*

Wife next contends that the ICA's "'one opportunity' to petition for a protective order" rule should be applied prospectively. This court has previously stated that, "where substantial prejudice results from the retrospective application of new legal principles to a given set of facts, the inequity may be avoided by giving the guiding principles prospective application only." *State v. Ikezawa,* 75 Haw. 210, 220–21, 857 P.2d 593, 598 (1993) (footnote omitted). In *Ikezawa,* this court considered whether: (1) "the decision establishes a new principle of law"; (2) "retroactivity furthers or retards the purpose and effect of the rule in question"; and (3) "retroactive application produces substantially inequitable results." *Id.* at 221 n. 11, 857 P.2d at 598 n. 11 (citation omitted).

Here, it cannot be said that the ICA's decision in this case "establishe[d] a new principle of law." *Id.* *Tortorello* did not overrule any clear precedent as set forth in any decision made by this court or the ICA. *Cf. Lindinha v. Hilo Coast Processing Co.,* 104 Hawai'i 164, 170, 86 P.3d 973, 979 (2004) (applying its decision prospectively "[b]ecause the law at the time appeared to mandate" a different course of action); *Ikezawa,* 75 Haw. at 221, 857 P.2d at 598 (stating that a decision "establishe[d] a new principle of law because it overrule[d] [this court's] clear precedent as set forth in [a prior decision]"). Rather, *Tortorello* essentially confirms the notion that a petition "could have and should have included all of [the petitioner's] allegations about all past acts of abuse and threats of abuse that made a protective order neces-

sary to prevent domestic abuse or a recurrence of abuse." *Id.* at 222, 145 P.3d at 765. Indeed, common sense dictates that, the more instances of abuse that are included in the petition, the greater likelihood of success that a TRO and/or order of protection would be issued. Thus, the ICA did not gravely err by not applying its decision prospectively.

In sum, based on the foregoing, Wife fails to establish grave error on the part of the ICA with respect to the merits of the case. We next address the ICA's award of costs incurred on appeal in favor of Husband.

### D. *Award of Costs*

Finally, Wife contends that the ICA erred in awarding costs in favor of Husband. As previously mentioned, the ICA awarded Husband's request for costs in its entirety, *i.e.*, $628.41. Specifically, Husband had sought reimbursement of: (1) $298.41 for photocopies and postage; (2) $255.00 for filing fees; and (3) $75.00 for transcript fees. As more fully discussed below, Wife asserts that: (1) Husband's request for costs was untimely filed; and (2) the request failed "to provide copies of invoices, bills, vouchers or receipts" and the costs requested are "either unauthorized or are excessive." We discuss each assertion in turn.

#### 1. Timeliness

Wife asserts that Husband untimely filed his request for costs on August 25, 2006, four days after the deadline for submission. Hawai'i Rules of Appellate Procedure (HRAP) Rule 39(d)(2) (2007) provides in relevant part that

> [a] request for fees and costs or necessary expenses must be filed with the appellate clerk, with proof of service, no later than 14 days after the time for filing a motion for reconsideration has expired or the motion for reconsideration has been decided. An untimely request for fees and costs or necessary expenses *may* be denied.

(Emphases added.) Here, the ICA decided Wife's motion for reconsideration on August 7, 2006. As such, Husband's request for costs should have been filed no later than fourteen days after August 7, 2006, that is, August 21, 2006. However, Husband did not file his request for costs until August 25, 2006, four days after the deadline for submission. Nevertheless, HRAP Rule 39(d)(2) expressly indicates that an untimely request for costs "*may* be denied." (Emphasis added.) Thus, the ICA was not required to deny Husband's request for costs due to untimeliness.[9]

#### 2. Wife's Remaining Objections to the Award of Costs

Wife argues that:

> [Husband's request] should be summarily denied for its failure to provide copies of invoices, bills, vouchers or receipts, as required by [HRAP] Rule 39(d)(1) [ (2007) ]. Further, the costs listed in his schedule are either unauthorized or are excessive. [HRAP] Rule 39(c) [2007.] *The rule only authorizes reimbursement for the cost of copying briefs, nothing else.* Costs for copying of briefs should be reduced to $24.64, if they were not stricken as not having been properly supported and verified. [10] *The remainder of the costs for*

9. Although the appellate courts are not required to deny a request due to untimeliness, the appellate courts have exercised that discretion in denying outright an untimely request for fees and/or costs. Thus, we take this opportunity to caution counsel to comply with HRAP Rule 39(d)(2)'s mandate that such requests for fees and/or costs be filed no later than fourteen days after the time for filing a motion for reconsideration has expired or the motion for reconsideration has been decided.

10. In her opposition to Husband's request for costs at the ICA level, Wife explained more fully why costs for copying of briefs should be reduced to $24.64, asserting that:

> [T]he Opening Brief is 30 pages. 7 sets of 30 pages at 8 cents per page would amount to $16.80 The Reply Brief totaled 14 pages. So that should amount to $7.84. Accordingly, the permissible [HRAP] Rule 39(c) copying charges should only amount to $24.64, if they were not stricken as not having been properly supported and verified.

Wife apparently chose eight cents per page as the rate because, according to the "declaration of counsel" affixed to her opposition, counsel declared that (1) "Kinko's Office and Print Center located at 590 Queen St., Honolulu, Hawai'i, charges $.065 to $.08 per copy, depending on volume" and (2) Newtech Imaging located at 333 Queen St., Honolulu, Hawai'i, charges $.07 per

*copying charges, postage, and other fees should be completely stricken as they are either undocumented or are not authorized by Rule. Other than [HRAP] Rule 39, [Husband] cited to no statute or other rule which authorizes reimbursement for costs for which he seeks.*

The basis, authorities and argument are set forth in detail in [Wife's] [o]bjections to [Husband's] Bill of Costs and Request for Payment filed on September 12, 2006 and are incorporated by reference.

Consequently, [Wife] submits that the $628.41 approved by the ICA is in contravention of [HRAP] Rule 39[.]

(Emphases added.)

HRAP Rule 39 provides in relevant part:

(c) *Costs defined.* Costs in the appellate courts are defined as: (1) *the cost of the original and one copy of the reporter's transcripts if necessary for the determination of the appeal;* (2) the premiums paid for supersedeas bonds or other bonds to preserve rights pending appeal; (3) *the fee for filing the appeal;* (4) *the cost of printing or otherwise producing necessary copies of briefs and appendices, provided that copying costs shall not exceed 20 [cents] per page;* (5) *necessary postage,* cost of facsimile, interstate travel, long distance telephone charges; and (6) any other costs authorized by statute or rule.

(d) *Request for Fees and Costs; Objections.*

(1) A party who desires an award of . . . costs shall request them by submitting an itemized and verified bill of . . . costs, together with a statement of authority for each category of items and, where appropriate, copies of invoices, bills, vouchers, and receipts. . . .

(Some emphases in original and some added.) (Brackets in original.) As previously mentioned, Husband had sought reimbursement of: (1) $298.41 for photocopies and postage; (2) $255.00 for filing fees; and (3) $75.00 for transcript fees.

a. *photocopy costs*

■ In his request for costs, Husband sought $254.70 for photocopying numerous documents, including his opening and reply briefs, pursuant to HRAP Rule 39.[11] As previously stated, HRAP Rule 39(c) defines costs in the appellate courts as, *inter alia,* "the cost of printing or otherwise producing necessary copies of briefs and appendices[.]" This court has stated that, "[a]ssigning a duly broad scope to 'briefs and appendices' as used in HRAP Rule 39(c)(4) . . . [this court] need not reimburse a prevailing party for filings other than those briefs encompassed by HRAP Rule 28, including the number of copies required by HRAP Appendix A." *Kamalu v. Paren, Inc.,* 110 Hawai'i 269, 279, 132 P.3d 378, 388 (2006). HRAP Rule 28(a) (2005) [12] provides that "[a]ll briefs shall conform with Rule 32 and be accompanied by proof of service of *two copies on each party* to the appeal." (Emphasis added.) HRAP Rule 32.1 (2005) further states in relevant part that:

The original of all documents shall be filed with the appellate clerk and copies shall be submitted as follows:

(a) <u>Opening, answering, and reply briefs</u>. **Two copies are required when filing.** After briefing is completed, the appellate clerk will notify the parties of any additional copies required.

. . . .

(c) <u>Where directed by the appellate clerk</u>. In all cases, the appellate clerk may

---

copy." Although not entirely clear, it appears that Husband chose thirty cents per page as the rate. However, as stated *infra,* HRAP Rule 39(c) expressly states that "copying costs shall not exceed 20 cents per page[.]" (Brackets in original omitted.)

11. As stated *infra,* Husband's postage costs totaled $9.71. As such, Husband's total costs for photocopies and postage should be *$264.41* ($254.70 + $9.71). However, as stated *supra,* Husband had sought reimbursement of *$298.41* for photocopies and postage. Thus, it appears

that Husband overstated his request for reimbursement of photocopies and postage by $34.00 ($298.41–$264.41).

12. As previously stated, Husband's appeal was filed on August 23, 2005. Inasmuch as Husband's appeal was filed before the new HRAP Rules took effect on July 1, 2006, we refer to the 2005 version of the HRAP Rules for the determination as to the number of briefs necessary for the appeal.

direct that a specific number of additional copies be furnished on or before a specified date.

(Underscored emphases in original and bold emphasis added.)[13] *See, e.g., Mikelson v. United Servs. Auto. Ass'n,* 108 Hawai'i 358, 120 P.3d 257 (2005) (determining that "the HRAP states that two copies of the answering brief must be submitted to the appellate clerk at the time of filing, two copies must be served on each party to the appeal ..., and an additional number of copies ... may be directed by the appellate clerk") (footnotes omitted).

In this case, Husband's opening brief contained a total of thirty (30) pages and Husband's reply brief contained a total of fourteen (14) pages, for a total of forty-four (44) pages. On April 27, 2006, the appellate clerk notified the parties of the "Order of Assignment," which indicated that three additional copies of the briefs previously submitted to the appellate clerk for filing were required. Consequently, as Wife aptly calculated, *see supra* note 10, Husband was entitled to reimbursement of *seven copies* of the opening and reply briefs (five copies for the ICA and two copies for Wife). Contrary to both parties, however, Husband is entitled to "copying costs ... not exceed[ing] 20 cents per page[.]" HRAP Rule 39(c)(4) (brackets in original omitted); *see supra* note 10. Thus, Husband *could* have sought $61.60 (44 pages × 7 copies × $.20) in photocopying costs for his opening and reply briefs. However, a review of Husband's request indicates that he only sought $55.80 in photocopying costs for his opening and reply briefs.

Moreover, with respect to the other copying charges, Husband did not cite to any "statute or ... rule which authorizes reimbursement for costs for which he seeks," as Wife pointed out to the ICA. Thus, Husband's copying costs should be limited to the requested $55.80 for photocopying the necessary briefs. Accordingly, the ICA gravely erred in reimbursing Husband (1) $198.90 (the requested $254.70 minus the allowable $55.80) for his photocopying costs and (2) the additional $34.00 for no apparent reason. *See supra* note 11.

### b. *costs for postage*

■ As previously stated, Husband sought $9.71 for postage. Husband's request indicated seven entries for postage:

| DATE | DESCRIPTION | UNITS | AMOUNT |
|------|-------------|-------|--------|
| 08/23/05 | Postage file marked Ntc of Appeal; Ex 1 COS to Renee & Ellen | 2 | $1.66 |
| 08/23/06 | Postage mail Ntc of Appeal to Ellen Politano, Esq. Renee | 2 | $ .60 |
| 12/01/05 | Postage ltr to Supreme Court Re 30 day ext. for Opening Brief | 2 | $ .74 |
| 07/17/06 | Postage tl to Renee A. Tortorello re: Respondent Appellant's Opening Brief; Statement of Respondent & COS | 1 | $1.83 |
| 03/02/06 | Postage tl to Theodore Chinn, Esq. re: 1 file marked Petitioner-Appellee's Response to Supplemental Memo of Law in Reply to Respondent-Appellant's Memo in Opp to Petitioner-Appellee's Mtn to Dismiss for Failure to File Opening Brief and for Lack of Jurisdiction and COS | 1 | $ .87 |
| 02/08/06 | Postage to Theodore Chinn, filed copies of pleadings transmittal dated 2/8/06 | 1 | $2.90 |
| 04/12/06 | Postage tl to Theodore Chinn, re: 1 file marked Respondent-Appellant's Reply Brief & COS | 1 | $1.11 |

HRAP Rule 39(c)(5) defines costs in the appellate courts as, *inter alia,* "necessary postage[.]" Here, no receipt or proof of the amount being charged was attached to the request. Nor did Husband file a response to Wife's application in order to provide any documentation for this court to conclude that the requested amounts in postage were reasonably and necessarily incurred in the appeal to the ICA. Consequently, Husband did

---

13. HRAP Appendix A merely confirms that two copies are required in addition to the original document submitted to the appellate clerk for filing.

not reasonably demonstrate his expenses for postage. Accordingly, the ICA gravely erred in reimbursing Husband $9.71 in costs incurred for postage.

### c. *filing fees*

As previously mentioned, Husband sought $255.00 for reimbursement for filing fees. Specifically, Husband's request indicated:

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 08/23/05 | Filing Fee $225.00 | $225.00 |
| 01/26/06 | Filing Fee $30.00 (client paid by check 3/1/06) re: Mtn to Supplmeent Record; Dec of MSK; Ex 1; COS | $ 30.00 |

HRAP Rule 39(c)(3) defines costs in the appellate courts as, *inter alia*, "the fee for filing the appeal." This court has stated that:

> Inasmuch as appeals by non-indigent parties generally require prepayment of fees, the "why," "when," and "to whom" are self-evident as to $225.00[.] *See* HRAP Rule 45(e)(5) [ (2005) ] (Supreme Court filing fee of $100.00); HRS §§ 607–5(c)(23) (Supp.2004) (circuit court fee of $100.00 upon filing of notice of appeal), 607–5.7 (Supp.2001) ($25.00 surcharge for indigent legal services); HRAP Rule 3(a), (f) (consequences of failure to pay, including dismissal of appeal).

*Kamalu,* 110 Hawai'i at 279, 132 P.3d at 388. Consequently, the $225.00 requested by Husband is reimbursable, pursuant to HRAP Rule 39(c)(3). However, inasmuch as Husband did not cite to any authority which permits reimbursement for the $30.00 filing fee allegedly incurred on January 26, 2006 for filing a motion to supplement the record, Husband's request for reimbursement of filing fees should be limited to $225.00. Accordingly, the ICA gravely erred in reimbursing Husband $255.00 in costs incurred for filing fees.

### d. *transcript fees*

Finally, Husband requested $75.00 for transcript fees. HRAP Rule 39(c)(1) defines costs in the appellate courts as, *inter alia,* "the cost of the original and one copy of the reporter's transcripts if necessary for the determination of the appeal." In *Kamalu,*

this court concluded that the prevailing party had "reasonably demonstrated" its transcript fees over the losing party's objection of inadequate documentation, noting that:

> [The prevailing party] lists two charges apparently related to transcript production, to wit, $112.60 for "Professional Fees—Christine Jordan," and $210.94 for "Court Reporter Fees—Phyllis Tsukayama." [The prevailing party] also attaches what appears to be a photocopy of its own ledger, recording the outlays to Jordan (December 6, 2001) and Tsukayama (December 24, 2001). Consequently, [the prevailing party] has reasonably demonstrated expenses of $112.60 plus $210.94, which equals $323.54.

*Id.* at 279 n. 13, 132 P.3d at 388 n. 13. In this case, however, Husband's request merely listed the following:

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 03/01/06 | Transcript Fee $75.00 (client paid by check #185) | $75.00 |

Husband did not attach any documentation in his request nor did Husband file a response to Wife's application in order to provide any documentation for this court to conclude that the requested transcript fee was reasonably and necessary incurred in the appeal to the ICA. Consequently, Husband did not "reasonably demonstrate[ ]" his expenses for transcript fees. Accordingly, the ICA gravely erred in reimbursing Husband $75.00 in costs incurred for transcript fees.

### IV. *CONCLUSION*

Based on the foregoing, we affirm the ICA's October 18, 2006 judgment on appeal with respect to the merits of Husband's appeal. We vacate, however, the ICA's award of costs to Husband and, instead, award costs in the amount of $280.80 in favor of Husband as against Wife.